THE PEOPLE *ex rel.* Cornelius Martin *v.* M. M. MALLARY,

and

THE PEOPLE *ex rel.* Ralph Dorsey *v.* SAME.

*Opinion filed April 10, 1902.*

1. HABEAS CORPUS—*limits of rule that habeas corpus will not lie to test validity of statute.* The rule that *habeas corpus* will not lie to test the validity of the law under which a person was convicted of a crime, but that appeal or error is the proper remedy, does not apply where the statute, the validity of which is attacked, has no reference to the conviction but only to the detention of the prisoner after his commitment. (*People* v. *Jonas,* 173 Ill. 316, explained.)

2. SAME—*habeas corpus lies where event takes place after conviction.* Under clause 2 of section 22 of the Habeas Corpus act a writ of *habeas corpus* will lie where, although the original imprisonment was lawful, yet by some subsequent act, omission or event the prisoner has become entitled to his discharge.

3. CRIMINAL LAW—*there is no power outside of the courts to punish persons for crime.* In the administration of the criminal laws of the State there is no power outside of the courts to authorize the punishment of persons for crime by confinement in the penitentiary, and the constitution expressly inhibits any person or collection of persons of one department of the government from exercising the powers of the others except as expressly permitted.

4. REFORMATORY—*section 15 of the State Reformatory act construed.* Section 15 of the State Reformatory act, as amended in 1897, (Laws of 1897, p. 286,) purports to confer power upon the board of managers to disregard the finding and judgment of the trial court, and to ascertain and determine for itself whether the prisoner has been properly sentenced to the reformatory and whether he should not have been sentenced to the penitentiary, thus authorizing them to annul the judgment of the trial court, which, under the constitution, courts of review have exclusive power to do.

5. CONSTITUTIONAL LAW—*section 15 of the State Reformatory act is unconstitutional.* Section 15 of the State Reformatory act, which authorizes the board of managers to transfer, temporarily, to the penitentiary persons shown to their satisfaction to have been over twenty-one when they were sentenced or to have been previously convicted of crime, and those whom they deem incorrigible, is unconstitutional.

6. SAME—*effect of unconstitutionality of section 15 of Reformatory act.* The fact that section 15 of the State Reformatory act, under which alleged incorrigible inmates were transferred to the penitentiary, is unconstitutional, does not entitle such persons to discharge on

*habeas corpus*, where they have been returned to the reformatory, to which they were lawfully committed, and were being held there under the original *mittimus* when the petition was presented.

7. VOLUNTARY ESCAPE—*voluntary escape doctrine does not apply to criminal cases.* The transfer of alleged incorrigible inmates of the State reformatory to the penitentiary cannot be said to be a voluntary escape, which prevents their being lawfully returned to and held at the reformatory, since the doctrine of voluntary escape has no application to criminal cases.

ORIGINAL petition for *habeas corpus.*

WILLIAM O. LAMONTE, for relator Cornelius Martin:

Counsel for relator contends that section 15 is void because repugnant to (*a*) section 2 of article 2, that no person shall be deprived of life, liberty or property without due process of law; (*b*) section 5 of article 2, of the right of trial by jury as heretofore enjoyed; (*c*) section 8 of article 2, that no person shall be held to answer for a criminal offense, unless on indictment, etc.; (*d*) section 9 of article 2, giving the right to appear and defend in person and by counsel; (*e*) section 11 of article 2, that penalty be proportioned to the offense; (*f*) article 3, of distribution of powers; (*g*) section 1 of article 6, vesting judicial powers in courts.

The constitutionality of the law may be tested on *habeas corpus* even after conviction.   15 Am. & Eng. Ency. of Law, (2d ed.) 204; *Ex parte Siebold,* 100 U. S. 371; *State* v. *Ryan,* 70 Wis. 676; *Commonwealth* v. *Plumley,* 156 Mass. 236; *Ex parte Smith,* 135 Mo. 223; *People* v. *Risley,* 38 Hun, 280; *Ex parte Rodriguez,* 39 Tex. 705; *People* v. *Warden,* 144 N. Y. 529; *People* v. *Turner,* 55 Ill. 280.

Transferring relator to the penitentiary was a judicial act.   *Crider* v. *Tally,* 77 Ala. 424; *People* v. *Chase,* 165 Ill. 527; *People* v. *Cummings,* 88 Mich. 251; *Owners of Lands* v. *People,* 113 Ill. 296.

A statute vesting judicial functions elsewhere than in the tribunals established by the constitution is void. 6 Am. & Eng. Ency. of Law, (2d ed.) 1054; *People* v. *Chase,*

165 Ill. 527; *Chandler* v. *Nash,* 5 Mich. 409; *Missouri River Tel. Co.* v. *Bank,* 74 Ill. 217; *People* v. *Cummings,* 88 Mich. 251.

The procedure contemplated by this section is not according to the law of the land and denies due process of law. 10 Am. & Eng. Ency. of Law, (2d ed.) 304; *Colon* v. *Lusk,* 153 N. Y. 188; *Harris* v. *People,* 128 Ill. 585; *State* v. *Bates,* 14 Utah, 292; *Gross* v. *Rice,* 71 Me. 241.

The act of transfer was a voluntary escape. *Platt* v. *Sheriffs of London,* 1 Plowd. 36; 1 Hale's P. C. 590; *Martin* v. *State,* 32 Ark. 126; *Colby* v. *Sampson,* 5 Mass. 309; *Tilman* v. *Lansing,* 4 Johns. 47; *Lansing* v. *Fleet,* 2 Johns. Cas. 2.

In criminal cases, where the officer has voluntarily suffered an escape he has no power to re-take the prisoner. 6 Am. & Eng. Ency. of Law, 853*d; Ridgway's case,* 2 Coke, 52; 1 Russell on Crimes, (6th ed.) 893; Dalton on Sheriffs, 113; 2 Hawkins' P. C. chap. 19, sec. 12; *Boynton's case,* 2 Coke, 44; *Hawkins* v. *Plomer,* 2 Blackst. 1048; *Doyle* v. *Russell,* 30 Barb. 300; *Lansing* v. *Fleet,* 2 Johns. Cas. 2; *Ravenscroft* v. *Warden of Fleet,* 2 Wils. 294; *Wilkinson* v. *Jacques,* 3 Term L. Rep. 392.

J. GRAY LUCAS, for relator Ralph Dorsey:

A commitment to the Illinois State Reformatory carries with it no suggestion of infamous punishment. *Henderson* v. *People,* 165 Ill. 607; *People* v. *State Reformatory,* 148 id. 424.

A commitment to a penitentiary, with or without hard labor, entails infamous punishment. *United States* v. *Mackin,* 117 U. S. 348.

Section 15 of the Reformatory act vests judicial powers in a non-judicial body, and is therefore void. *People* v. *Cummings,* 88 Mich. 251; *Missouri River Tel. Co.* v. *Bank,* 74 Ill. 217; *People* v. *Chase,* 165 id. 527; *Crider* v. *Tally,* 77 Ala. 424; *State* v. *Noble,* 118 Ind. 350.

Penal statutes cannot be extended, by construction or implication, to either persons or things not expressly brought within their terms or clear meaning. *Pierce* v.

*People,* 81 Ill. 102; *People* v. *Warden,* 144 N. Y. 529; *People* v. *Moore,* 62 Mich. 496; *People* v. *Peacock,* 98 Ill. 172; *Harris* v. *People,* 128 id. 585; *State* v. *Bates,* 14 Utah, 293; *Hronek* v. *People,* 134 id. 146.

A commitment to a penitentiary by the arbitrary order of an administration board is a commitment without due process of law, and is violative of the following constitutional guaranties of liberty to every citizen, viz.: Section 2 of article 2, guaranty of due process of law; section 5 of article 2, guaranty of trial by jury; section 8 of article 2, guaranty against penalty except upon indictment; section 9 of article 2, guaranty of opportunity to make defense in person; section 11 of article 2, guaranty against disproportionate penalties.

Section 15 of the Reformatory act, as amended in 1893, has been inferentially declared unconstitutional by the Supreme Court. *People* v. *State Reformatory,* 148 Ill. 425.

The transfer was void because *ex post facto* in operation as to relator. Relator was transferred under the law of 1897, specifically expressed in the order of transfer, while the crime was committed and relator imprisoned nearly two months before the amendment became a law.

H. J. HAMLIN, Attorney General, CHARLES S. DENEEN, State's Attorney, and F. L. BARNETT, for respondent:

The exercise of the power of transferring prisoners is an act of discipline and administration, and not a judicial act. *Bradley* v. *People,* 148 Ill. 413; *George* v. *People,* 167 id. 447; *State* v. *Payne,* 60 Kan. 450.

The unconstitutionality of a statute cannot be tested by writ of *habeas corpus. People* v. *Jonas,* 173 Ill. 316.

The transfer, even if improper, was not a discharge. *Henderson* v. *People,* 165 Ill. 607.

Mr. JUSTICE CARTER delivered the opinion of the court:

These were writs of *habeas corpus* issued by this court, directed to the respondent, the superintendent of the Illinois State Reformatory at Pontiac, inquiring into the

cause of the detention and imprisonment, the one of Cornelius Martin and the other of Ralph Dorsey. The petition and return to the writ as to Cornelius Martin show that he was convicted of burglary by the circuit court of Marion county in August, 1893, was found to be of the age of twenty years and was sentenced to the reformatory for an indeterminate term, and was received into that institution on August 5, 1893. As to Ralph Dorsey, it was shown that on the 30th day of April, 1897, he was convicted of burglary by the criminal court of Cook county, and was then found to be of the age of nineteen years and was sentenced to said reformatory for an indeterminate term, and was thereupon delivered into the custody of said reformatory. Soon after April 18, 1900, said Cornelius Martin was by the action of the board of managers of said reformatory transferred to the Southern Illinois Penitentiary at Chester, as shown by the following record of their action in the premises, made an exhibit to their return:

"STATE OF ILLINOIS,        }
ILLINOIS STATE REFORMATORY. }

"Be it remembered, that on April 18, 1900, the same being one of the meeting days of the board of managers of the Illinois State Reformatory, and the said board being in session for the transaction of business, the following proceedings were had in relation to Cornelius Martin, Reg. No. 228, an inmate of said institution, and entered of record, in the words and figures following, viz.:

"'WHEREAS, section 15 of 'An act to establish the Illinois State Reformatory and to make an appropriation therefor,' as amended and in force July 1, 1897, provides that the board of managers of this institution may transfer to the penitentiary of the proper district any apparently incorrigible prisoners whose presence in the reformatory appears to be detrimental to the same; and whereas, the inmates hereafter named and directed to be transferred to the Southern Illinois Penitentiary at Chester is incorrigible and his presence seriously detrimental to its success as a reformatory, as has been shown to our satisfaction; therefore it is

"'*Resolved*, That the superintendent of this institution be and the same is hereby directed to transfer to the Illinois State

Penitentiary at Chester, as soon as practicable, to be there held in accordance with law, the following prisoners: Cornelius Martin.

" '*And be it further resolved*, That he is hereby directed to deliver to the warden of said penitentiary, with said prisoners, the orders or processes of court upon which said prisoners were committed to this institution, also certify to the county from which they were committed, the date of their receipt and a copy of this resolution under seal.

" '*And be it further resolved*, That the warden of said penitentiary be and is hereby required and commanded to take and keep prisoners from and after their delivery to him until paroled or discharged as authorized by law, or re-called to this institution by the board of managers, in accordance with law, provided such term of imprisonment shall not exceed the maximum term of imprisonment for the offense for which said inmates were convicted and sentenced.' "

And soon after August 18, 1900, said Ralph Dorsey was by the action of said board transferred to the Illinois State Penitentiary at Joliet under similar resolution and proceedings, also entered of record, as in the case of Cornelius Martin, and for the same cause. Afterward, soon after January 8, 1902, said Martin and said Dorsey were returned to said reformatory in pursuance of the following proceedings of said board of managers, as appears by the return to said writs: "On motion of Manager Kinney it was ordered that the superintendent be authorized to return all boys who have been transferred from the reformatory to the Joliet and Chester penitentiaries to the reformatory, subject to the writs of *habeas corpus* already served, and that these boys' records be examined, and that they be allowed credit for all the good time made in the reformatory and good time earned in the penitentiaries."

The relators had been returned to and were in said reformatory when the petitions were filed in this court, and the returns to the writs show that they are detained there, in each case, by virtue of the *mittimus* issued in due form out of the court in which the relator was convicted.

The grounds upon which the discharge of the relators is demanded are, that said section 15 of the act to establish the Illinois State Reformatory is unconstitutional and void, and that the transfer of the relators to the penitentiary was a voluntary escape; that the relators could not lawfully be re-taken, and that therefore their subsequent detention by virtue of the *mittimus* became and was without authority of law.

Said section 15 is as follows: "The board of managers shall have the power to transfer, temporarily, to the penitentiary of the proper district, any prisoner who, subsequent to his committal, shall be shown to their satisfaction to have been more than twenty-one years of age, or to have been previously convicted of crime, and may also transfer any incorrigible prisoner, whose presence in the reformatory appears to be seriously detrimental to the well-being of the institution. And such managers may, by written requisition, require the return to the reformatory of any person who may have been so transferred. Each prisoner so transferred to the penitentiary shall be held therein, subject to such rules and regulations provided by the commissioners of said penitentiary in harmony with this act, unless re-called to the reformatory, as herein provided by the board of managers." (Hurd's Stat. 1899, p. 1380.)

The question has been raised by the Attorney General and the State's attorney at the threshold, whether *habeas corpus* will lie to test the constitutionality of the law under which the detention of the relators is justified by the respondent. It is said that this court has decided in *People* v. *Jonas*, 173 Ill. 316, that it will not. The writ was refused in that case because the relator was imprisoned by virtue of a judgment of conviction rendered by a court of competent jurisdiction to decide all questions involved, including the constitutionality of the law under which the conviction was had, and because the relator in that case could have had all errors corrected by appeal,

including any erroneous decision as to the validity of the statute; that it would be in contravention of the statute to allow parties convicted of offenses by courts having jurisdiction to determine all questions involved in the proceeding, to substitute the remedy by *habeas corpus* for the ordinary remedies for the correction of errors by appeal or writ of error. In the case at bar the question affecting the legality of the further detention and imprisonment of the relators did not arise before their conviction and sentence, but afterward, and in these applications the validity of the statute under the proceedings which were had in the circuit court is not attacked and no question of error in those proceedings is attempted to be raised. Besides, the events which, it is claimed, entitle the relators to their discharge did not happen until after the time in which they could have sued out writs of error, and the cases of the relators fall within the second paragraph of section 22 of the *habeas corpus* act, which provides, that "where, though the original imprisonment was lawful, yet by some act, omission or event which has subsequently taken place, the party has become entitled to his discharge." The sole question in this case is whether the act or event set forth in the petition, and also in the return to the writ, and which took place after judgment and after the relators had been delivered into the custody of said reformatory, entitles the relators to their discharge.

The respondent justifies the said act of the board of managers and of himself by the authority attempted to be conferred by said section 15. While it may be, from the view we take of these cases, that they could be decided without considering the validity of section 15, still we cannot say here, as we did in *People ex rel.* v. *State Reformatory*, 148 Ill. 413, that the question of the constitutionality of said section is not properly before us. The relator in that case had not been transferred to the penitentiary under said section, while in these cases the re-

lators have been so transferred,—and that is the very ground of their application for the writ. It was, however, said in the case cited, that "it may be difficult to say that the provisions of said section 15 are valid," and we have no doubt that the question is one which we should finally determine in the cases here presented. Since that case was decided, in 1894, the General Assembly has amended said section by an act approved June 9, 1897, by omitting from the section so much of it as provided that the person so transferred should be held in the penitentiary *at hard labor, and should be so held for the maximum term provided by law for the crime for which he was convicted,* unless re-called to the reformatory. Some other minor changes also were made, but the question still remains whether the section as amended is in harmony with the constitution. Section 2 of article 2 of the constitution provides that "no person shall be deprived of life, liberty or property, without due process of law." And article 3 provides that "the powers of the government of this State are divided into three distinct departments,—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted." And section 1 of article 6 provides that "the judicial powers, except as in this article is otherwise provided, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be created by law in and for cities and incorporated towns." Other provisions are referred to, but the above are sufficient to dispose of the question as to the validity of said section 15.

It is contended on behalf of respondent that the transfer of the relators to the penitentiary because they were incorrigible and their presence in the reformatory appeared to be seriously detrimental to the well-being of the institution was merely an act of necessary discipline

which the board had power to exercise in the management of the reformatory. We cannot so conclude. By the transfer to the penitentiary they surrendered all control and power of discipline over the prisoners placed in their control to another and independent administrative board or authority, which, by the judgment and process of the court, had no right of custody or control over such prisoners, and to whose custody and control the court, which had all the judicial power there was in the matter, had no power to commit such prisoners. There are material distinctions, under the laws of this State, between the penitentiary and the State reformatory. In the case cited (148 Ill. 413,) we said (p. 418): "That in the enactment of this law it was the humane and benign intention of the General Assembly to afford a means for the reformation of youthful criminals is manifest from the fact that the institution is devoted solely to the reception of minors between the ages of ten and twenty-one years." And again, at page 423: "There is in the law of nature, as well as in the law that governs society, a marked distinction between persons of mature age and those who are minors. The habits and characters of the latter are, presumably, to a large extent as yet unformed and unsettled. The distinction may be well taken into consideration by the legislative power in fixing the punishment for crime, both in determining the method of inflicting punishment and in limiting its quantity and duration. An adult convicted of burglary would be sentenced to the penitentiary and to either solitary confinement or hard labor therein, and the statutes which consign him to such punishment must be regarded as highly penal. A minor, however, instead of being sentenced to solitary confinement or hard labor in a penitentiary is committed to the State reformatory. The general scope and humane and benign purpose of the statute establishing the reformatory are clearly indicated in the act. * * * It is manifest that the sentences provided for in the statute

establishing the reformatory, although to be regarded as punishments for crime, are not of so purely a penal character as those imposed upon adults convicted of like offenses, but that the primary object of the statute is the reformation and amendment of those committed to the reformatory."

In *Henderson* v. *People*, 165 Ill. 607, we held that the Illinois State Reformatory at Pontiac is not a penitentiary, and that a person under twenty-one years of age, who was shown to have been previously sentenced to the State reformatory, could not, under section 12 of said act, be properly sentenced to the penitentiary, but should have been sentenced to the reformatory. Among other things we there said (p. 610): "This section (sec. 12) authorizes the court to sentence to the reformatory where a criminal between the ages of sixteen and twenty-one is not shown to have been previously sentenced to a penitentiary in this or any other State or country. The only penitentiaries in this State are the penitentiary at Joliet and the Southern Illinois Penitentiary at Chester, and the State reformatory is distinguished from them by every clause of the section, and especially by the provision that existing laws should be applicable to the reformatory so far as to enable courts to sentence prisoners to said reformatory and not to the penitentiary. The State reformatory is nowhere designated by the legislature as a penitentiary.   *   *   *   The reformatory is different in its object and purposes from the penitentiary, and it cannot be called a penitentiary. The main object and purpose of the reformatory, although confinement there is a punishment for crime, are the reformation of those who, from immature age, are presumably proper objects of efforts at reformation."

It seems clear that there is a material difference in the grades of punishment provided for in the two institutions. The penitentiary is a State's prison, but while those sentenced to imprisonment in the reformatory are

imprisoned in a State institution, still the object, purposes and management of the institution are so different from those of a penitentiary or a mere prison that the reformatory cannot properly be designated as a State's prison, as that term is usually understood and used. It follows, as we think, that a sentence to the penitentiary, involving, as it does, infamous punishment, is a severer grade or degree of punishment than a sentence to the reformatory, and involves consequences to the convict of a much more serious character.

The question then is, has the General Assembly the power to authorize the board of managers of the reformatory,—a mere executive or administrative board,—to send to the penitentiary persons committed to their custody in such reformatory for a breach of discipline prescribed by such board for the government of the institution, or because the presence of such persons is detrimental to the well-being of such institution? We are of the opinion that such power is denied to the General Assembly by more than one provision of the constitution. The power so attempted to be conferred is judicial, and not executive or administrative. It is not merely disciplinary, and it can only be exercised by a court vested with judicial power by the constitution. It must be observed that such transfer is not within the judgment and sentence of the court, and the act of the board is not simply a determination of the condition or circumstances under which the prisoner may be committed to the penitentiary, but it is outside of and beyond such judicial determination, and is the exercise of a judicial power which the legislature has even withheld from the courts. Doubtless, legislation might be so framed as to make the order of transfer by the board a mere determination of the conditions on which, in executing the judgment of the court, the prisoner could lawfully be transferred from the reformatory to the penitentiary; but section 15, as before said, cannot be so construed.

In the administration of the criminal laws of the State
there is no power outside of the courts to authorize the
punishment of persons for crime by confinement in the
penitentiary, and the constitution expressly inhibits any
person or collection of persons of one department of
government from exercising any power properly belong-
ing to either of the others, except as expressly permitted
by the constitution, and it cannot, of course, be claimed
that this case falls within any such exception. Nor can
it be said that the relators were so transferred and im-
prisoned in the penitentiary in accordance with the law
of the land or by due process of law. The transfer was
made by the board, as we have seen, without lawful au-
thority, and it was made without any hearing and with-
out trial, but by mere resolution passed and entered upon
its records. We have no doubt of the power of the board,
in the exercise of its powers of discipline, to determine
in that manner that the relators were incorrigible and
that their presence with other inmates of the institution
was seriously detrimental to the well-being of the re-
formatory, and to do and perform all proper disciplinary
acts in the premises to punish such refractory inmates,
and to obviate, as far as practicable, the injurious ef-
fects of their association with other inmates, but it is
meant only to be said that the board could not com-
mit the offenders to a State's prison to which they had
not been committed by the judgment of conviction, or
without trial according to the law of the land. The
statute purports also to confer power on the board to
disregard the finding and judgment of the court, and to
ascertain and determine for itself, independently of such
judgment, whether the prisoner had been properly sen-
tenced to the reformatory and whether he should not
have been sentenced by the court to the penitentiary.
The statute purports to confer power upon the board to
determine, from its own sources of information, to its
satisfaction, that the prisoner was more than twenty-one

years of age when he was convicted or that he had pre-
viously been convicted of crime, and upon such determi-
nation, without regard to the judgment of the court, to
transfer the prisoner to the penitentiary. But the stat-
ute makes it the duty of the courts to adjudicate upon
and determine those questions, and their final judgments
cannot be made subject to review and reversal by an
administrative board having no judicial power. The
constitution, and statutes enacted under it, provide for
courts of appeal and review, and they alone have power
to set aside or annul the final judgments of the trial
courts.

We are referred to the case *In re Murphy*, 62 Kan. 422,
as an authority in conflict with the views we have ex-
pressed. The statute there reviewed is very similar to
the one here under consideration, but as we understand
the law to be in that State, the advantages of the reform-
atory over the penitentiary are not confined to minors
and the same distinctions do not exist between the two
institutions as they do in this State, and the person
convicted may by the court be sentenced directly to the
penitentiary instead of the reformatory,—a thing which
the courts in this State cannot do. But whether these
distinctions are sufficient or not to account for the differ-
ent views which we entertain, we must determine in ac-
cordance with our own laws and decisions the question
at issue.

We are clearly of the opinion that said section 15
is unconstitutional and void, and it must be so declared.
But it does not follow that the relators are entitled to
be discharged from detention and confinement in the re-
formatory, to which they were committed by the final
judgment and process of the courts in which they were
convicted. We cannot give our assent to the view that
because they were unlawfully transferred to the peniten-
tiary and have been returned to the place of confinement
to which they were lawfully committed, they are now, or

were when the petitions were presented, entitled to their discharge altogether.

The point is made that the case is one of a voluntary escape, and that in such case the party cannot be retaken and continued in imprisonment. We cannot hold that that doctrine has any application to criminal cases. In civil cases, as in imprisonment for debt, the creditor, and not the People, is interested in the prisoner's detention, but in criminal cases the People of the whole State have an interest in the due and proper detention and punishment of the violators of the criminal law, and public interest cannot be made subservient to the illegal acts of those officers having charge of persons convicted of crime, and whose duty it is to execute the sentence of the court in accordance with its final process. (Am. & Eng. Ency. of Law,—2d ed.—313.) The return shows that the relators are, and were when the petitions were presented, held in the reformatory under the *mittimus* issued by the courts which convicted them, and not otherwise. They are therefore remanded to the custody of the authorities of said reformatory, and the writs of *habeas corpus* herein are dismissed at the cost of the petitioners.

*Writs dismissed.*