(No. 24977.—

THE PEOPLE *ex rel.* Otto Kerner, Attorney General, Petitioner, *vs.* M. L. McKinley, Judge, Respondent.

*Opinion filed February 20, 1939—Rehearing denied April 19, 1939.*

JOHN E. CASSIDY, Attorney General, A. B. DENNIS, and WILLIAM G. WORTHY, for petitioner.

WALTER BACHRACH, (ARTHUR MAGID, and JOSEPH J. STRASBURGER, JR., of counsel,) for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

On leave, there was filed at a preceding term of this court, a petition for writ of *mandamus* in the name of the People on the relation of the Attorney General, seeking a writ commanding the respondent, as judge of the criminal court of Cook county, to expunge from his records an order entered in a *habeas corpus* proceeding discharging Raymond Scott from the custody of the warden of the penitentiary at Joliet. The title of the case heard by respondent was "People ex rel. Scott *vs.* Joseph E. Ragen, Warden." To respondent's answer to the petition a motion to strike was filed, thus making up a question of law.

The facts as set out in the petition are that Raymond Scott, on April 4, 1929, was convicted in the criminal court of Cook county under four indictments charging robbery, and as he was then 18 years of age he was committed to the reformatory at Pontiac until discharged by law. The four sentences were imposed to run concurrently. He was, accordingly, delivered to the superintendent of the reformatory on April 18, 1929. On October 1, following, he was removed from the reformatory, on a writ of *habeas corpus ad testificandum,* issued at the request of the State's attorney of Cook county, in order to secure his testimony in a case then on trial. While in Cook county he was tried in the criminal court of that county on a charge of murder, convicted and sentenced to the Illinois State Penitentiary at Joliet for a term of fourteen years. He was immediately taken to the penitentiary and there served the sentence for murder. That sentence expired June 30, 1938.

Sometime after July 1, 1933, the *mittimuses* in the robbery cases were, by order of the Department of Welfare, transferred to the Illinois State Penitentiary under section 6 of an act in relation to the Illinois State Penitentiary, commonly known as the "Penitentiary act of 1933." This act will be hereinafter referred to. Upon expiration of the sen-

tence for murder, Joseph E. Ragen, the warden of the Illinois State Penitentiary, continued to detain Scott on the *mittimuses* in the robbery cases transferred from the reformatory. On or about September 21, 1938, Scott filed a petition for a writ of *habeas corpus* in the criminal court of Cook county alleging that he was held without warrant or legal authority by the warden of the penitentiary. On Ragen's return, and on hearing September 23, 1938, respondent entered an order discharging Scott from the custody of Ragen. This is the case under consideration on this petition. On October 13, 1938, the petition now before us was filed.

It is contended by relator that while it was the duty of the court hearing the murder charge against Scott to remand him to the reformatory at Pontiac, from which he came, and to enter sentence against him on the murder conviction, to follow the expiration of his reformatory sentence, yet the fact that the court did not properly commit Scott does not discharge his duty to society nor cause the abandonment of the robbery sentences. It is pointed out that Scott might have, by writ of error, tested the correctness of the sentence, but did not see fit to do so.

It is a rule of general acceptance by courts of this country that a sentence of punishment for crime may be satisfied only by actual service of the imprisonment imposed, unless remitted by death or some legal authority. (*People* v. *Toman,* 367 Ill. 163; *Massey* v. *Cunningham,* 169 Ark. 410, 275 S. W. 737; *State* v. *Cockerham,* 24 N. C. 204; *Ex parte Halbert,* 45 Okla. Crim. App. 167, 282 Pac. 478; *Hallom* v. *Hopkins,* 21 Kan. 638.) It cannot, therefore, be said that the sentences for robbery were suspended during Scott's incarceration, as contended by the respondent. Cases cited by respondent in support of this contention are those where an unexplained delay between sentence and issuance of *mittimus* deprived the court of further authority, or where the court has failed, for an indefinite time, to sen-

tence the defendant. (*People* v. *Barrett,* 202 Ill. 287; *People* v. *Allen,* 155 id. 61.) *People* v. *Shattuck,* 274 Ill. 491, was a case where sentence was properly passed, but the execution thereof indefinitely suspended. It was held that the sentence could not be imposed after a delay of six years. These cases do not reach the question involved here.

In a criminal case a court can change or vacate its judgment only while it remains unexecuted, and is without jurisdiction, in the absence of statutory authority therefor, to vacate or change the judgment after the prisoner has begun his sentence. (*People* v. *Leinecke,* 290 Ill. 560; *People* v. *Whitman,* 277 id. 408.) As Scott had not completed his sentence in the reformatory, it was the duty of the superintendent of that institution to have called to the attention of the court trying the murder charge, the fact that Scott's previous sentence had not been completed, and that he was still in the custody of the superintendent of the reformatory. Under those facts the proper sentence in that case would have been that he be remanded to the reformatory until he had served his sentence and then be transferred to the penitentiary at Joliet to begin sentence under the *mittimus* issued on the murder conviction. (*People* v. *Decker,* 347 Ill. 258.) Failure of officials to perform their duties cannot create a right in a defendant to his discharge as beneficiary of their failure. *People* v. *Thompson,* 358 Ill. 81; *People* v. *Mallary,* 195 id. 582.

Respondent set up in his answer, and contends here, that sections 1 and 6 of the Illinois State Penitentiary act of 1933, (Ill. Rev. Stat. 1937, chap. 108, pars. 105, 110,) if construed to apply to Scott, must be held to be unconstitutional. Section 1 is as follows: "The institutions heretofore known as the Illinois State Penitentiary, at Joliet, the Southern Illinois Penitentiary, at Chester, the Illinois State Reformatory, at Pontiac, and the Illinois Asylum for Insane Criminals, at Chester, are hereby consolidated into a single institution to be known as the Illinois State Peni-

tentiary. The expression 'Penitentiary System' hereafter used in this act shall be taken to mean the institution resulting from such consolidation." Section 6 is as follows: "Subject to the other provisions of this act, the department [Department of Public Welfare] shall have full power to transfer prisoners from one division to another as often as the nature of the individual case or the exigencies of administration may require."

It is pointed out by respondent that these sections were enacted some four years after Scott's incarceration in the reformatory on his conviction for robbery, and his transfer to the penitentiary under the above quoted statute would be illegal, because sections 1 and 6, which changed the reformatory to a penitentiary, would, by such transfer, impose punishment not imposed on him on the robbery convictions. At the time of Scott's sentence and incarceration in the reformatory, section 11 of an act commonly referred to as the Parole act, in providing for the transfer of prisoners to the penitentiary, provided that before a prisoner in the reformatory could be transferred to the penitentiary the Department of Public Welfare should make application to the court in which the prisoner was convicted or from which he was committed, for an order for such transfer. The act provided for a notice to the prisoner and his presence in court and also provided the procedure necessary to be had before such transfer could be made. The act of 1933 does not provide for notice, hearing or presence of the prisoner in court. In fact, no court proceedings are contemplated.

This court has pointed out the difference between a commitment to the reformatory and one to the penitentiary, and has characterized a sentence to the latter as more severe in its nature than to the former. In *People* v. *Queen*, 326 Ill. 492, this court said: "A sentence to the penitentiary renders the convict infamous while a sentence to the re-

formatory carries with it no such result. It is, therefore, a severer grade or degree of punishment than a sentence to the reformatory and involves consequences to the convict of a much more serious character, as was held in *People v. Mallary*, 195 Ill. 582." To the same effect are *Henderson* v. *People*, 165 Ill. 607, and *People* v. *Illinois State Reformatory*, 148 id. 413. This was the law when Scott was sent to the reformatory.

At the time Scott was sentenced on the robbery charges, the Parole act of 1917 was in force. This act was a revision of the act of 1895. Section 11 of that act (Smith-Hurd Stat. 1929, chap. 38, par. 812, p. 1084) provided: "It shall be a part of every sentence or commitment, whether definite or indeterminate or general, to either of the State institutions for the incarceration, punishment, discipline, training or reformation of persons convicted of an offense which might have been punished by imprisonment in the penitentiary if committed by an adult, and it shall be a part of every sentence to the reformatory, whether definite or indeterminate or general, except where the offense was an offense punishable in the county jail or by a fine, or in the county jail with or without a fine, as fully as though written in each of said classes of sentences, that the person so sentenced or committed to such State institution or to the reformatory, respectively, shall be liable and subject to be transferred to a penitentiary in the manner herein in this section provided." That section further provided, as we have seen, that the Department of Public Welfare might file a petition in the trial court for such transfer, whereupon the court was to issue notice, of at least ten days, to be served upon the prisoner, and set the cause for hearing. It is not claimed that this was done and no statute appears to have been in existence authorizing a transfer by the department, at the time Scott was sentenced on the robbery charges, without a court order.

Section 11 just quoted provided that the court trying the original charge should retain jurisdiction for the purpose of hearing a petition on the part of the Department of Public Welfare and the provisions of that section were made a part of the sentence. It is said that section 11 was superseded by section 6 of the Illinois Penitentiary act hereinbefore quoted. However, the question remains whether section 6 can be made applicable to sentences imposed before it went into effect, without an application to the court imposing the original sentence, as provided by section 11 of the act.

In 1933 the General Assembly passed an act amending certain sections of the act in relation to sentence and commitment of persons convicted of crime, known as the Parole act, and repealed certain acts and parts of acts therein named. By section 2 of the act of 1933 (Laws of 1933, p. 488) certain sections of the Parole act of 1917, including section 11 hereinbefore referred to, were declared to be repealed. Section 15 of the act of 1917 now stands as when enacted in 1917. This section, while repealing the Parole act of 1899, also provides that such repeal "shall not affect any conviction heretofore had under said laws."

It is the often-announced rule in this State that a statute will be deemed to operate prospectively only. It will not be presumed to have retroactive operation unless the language employed is so clear that it will admit of no other construction. *People* v. *David*, 336 Ill. 353; *Mather* v. *Parkhurst*, 302 id. 236; *Edmiston* v. *Donovan*, 300 id. 521.

Section 4 of the act governing the construction of statutes provides: "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, * * * or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, * * * save only

that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. * * * This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act."

In *People* v. *David, supra,* this court held that the act of 1927 reducing the minimum sentence for robbery from ten years to one year did not apply to persons convicted before its passage. To the same effect is *People* v. *Zito,* 237 Ill. 434.

Applying section 4 of the act relating to statutes, it is clear that the provisions of the amendment to the Parole act purporting to repeal section 11 of that act, cannot be held applicable to cases of commitment for crime under the so-called Parole act of 1917. To hold otherwise would be to render section 6 invalid as to cases such as Scott's. We are of the opinion that, at the time of the completion of the murder sentence against him, Scott, so far as the record shows, was still liable to complete his sentence at the reformatory for the reason, as we have indicated, that errors on the part of officials do not destroy the validity of duly imposed sentences. *People* v. *Mallary, supra,* was a *habeas corpus* proceeding on behalf of two prisoners who had been, by the board of managers of the Illinois State Reformatory, transferred therefrom to the penitentiary, under section 15 of the Illinois State Reformatory act then in force, which so provided. It was held that that act was unconstitutional but that it did not follow that the prisoners were entitled to be discharged from detention and confinement in the reformatory to which they had been committed by final process of the court in which they were convicted. The prisoners, in that case, had been returned to the reformatory from which they had been unlawfully transferred to the penitentiary, and this court held that they were, therefore, not entitled to discharge by writ of *habeas corpus.*

The people of the entire State have an interest in the detention and punishment of those convicted of crimes and the public interest cannot be made subservient to illegal acts of officers who have charge of such prisoners. (*People* v. *Mallary, supra; People* v. *Thompson, supra.*) Had Scott been returned to the reformatory upon completion of his sentence under the murder charge, he would not, under the holdings in the cases just cited, be entitled to discharge on *habeas corpus.* This, however, was not done, but he remained in the custody of Warden Ragen of the State Penitentiary. Since he had not been legally transferred to the penitentiary, Warden Ragen had no authority to hold him there, after completion of his sentence on the murder charge.

By section 22 of the Habeas Corpus act (Ill. Rev. Stat. 1937, chap. 65, par. 22) it is provided as follows: "If it appear that the prisoner is in custody by virtue of process from any court legally constituted, he can be discharged only for some of the following causes: * * * 5. Where, although in proper form, the process has been issued or executed by a person either unauthorized to issue or execute the same, or where the person having the custody of the prisoner under such process is not the person empowered by law to detain him." While Scott, so far as appears from the record, remains liable to complete his sentence in the penal institution at Pontiac, formerly known as the "Reformatory," unless legally transferred, he was not so held at the time his petition for *habeas corpus* was filed, but was in custody of Warden Ragen who was without authority to hold him. It is clear under the provisions of the Habeas Corpus act quoted, that respondent did not err in discharging him.

The writ of *mandamus* is denied.  *Writ denied.*