(No. 25298.—■■■■■■)
THE PEOPLE *ex rel.* John E. Cassidy, Attorney General, Petitioner, *vs.* M. L. McKINLEY, Judge, Respondent.

*Opinion filed October 13, 1939.*

JOHN E. CASSIDY, Attorney General, and A. B. DENNIS, for petitioner.

WALTER BACHRACH, (ARTHUR MAGID, of counsel,) for respondent.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an original petition for *mandamus* to compel the respondent to expunge a certain order entered in a *habeas corpus* proceeding before him, releasing one Alan Goldstein from incarceration in the Pontiac reformatory. The cause is identical, as to general facts, with *People* v. *McKinley,* 371 Ill. 190, where the facts are stated in full and need not be repeated here, the important difference between the two cases being that in the present case Goldstein was returned to the Pontiac reformatory prior to the filing of the petition for *habeas corpus* here, whereas Scott, in the former case, was in the custody of Joseph L. Ragen, warden of the Illinois State Penitentiary at Joliet.

Goldstein and Scott were convicted of robbery in the same proceeding in April, 1929, and sentenced to the reformatory. The following October both were returned to Cook county at the request of the State's attorney, to secure testimony, and while there were convicted of murder and sentenced to the penitentiary at Joliet for a term of fourteen years. The penitentiary sentences of both expired in June, 1938, and in September, following, a petition for a writ of *habeas corpus* was filed in each case before the respondent and the *Scott case* was heard.

In February, 1939, after the opinion in the *Scott case* was filed, the Goldstein petition for *habeas corpus* was amended showing that Goldstein had been returned to the Pontiac institution. It was held in the *Scott case* that because he was in the custody of warden Ragen of the State penitentiary at Joliet, it was not error to discharge him under the provisions of the Habeas Corpus act, as he was being held by a person not empowered by law to detain him. It was also there held that, so far as appeared from the record, Scott remains liable to complete his sentence in the penal institution at Pontiac. It was also pointed out that the people of the entire State have an interest in the detention and punishment of those convicted of crime, and such

interest cannot be made subservient to illegal acts of officers, and that, had Scott been returned to the reformatory upon his completion of the sentence on the murder charge, he would not be entitled to discharge on *habeas corpus*. That was not done in Scott's case but it was done in Goldstein's case, the one before us. That is the only marked difference, and this court has definitely held in the former case that where such is done the defendant is not entitled to discharge on *habeas corpus*. It follows that unless there exists some other controlling feature, of law or fact, the respondent was without authority or power to discharge Goldstein on *habeas corpus*.

The argument is made, however, that the act of 1933 known as the "Penitentiary act," (Ill. Rev. Stat. 1937, chap. 108,) declares that all of the penal institutions of the State should be known as a part of the "Penitentiary System;" that the General Assembly thus did away with the reformatory, as such, and made it a penitentiary, and, under the holdings of this court, the punishment of Goldstein was increased and he was therefore illegally detained. While, as argued by respondent, section 1 of the Penitentiary act declares that the Pontiac reformatory shall be hereafter known as a branch of the penitentiary, to hold that the act put out of existence, as such, the reformatory, would be to hold that the State is without power to longer detain those sentenced to the reformatory prior to 1933. That such could not have been the intention of the General Assembly seems apparent on mere statement of the proposition. That the General Assembly could have intended to create a situation whereby all of those sentenced to the Pontiac reformatory prior to the 1933 act and not legally transferred therefrom to the penitentiary, would be entitled to discharge from custody because the reformatory had been dispensed with, is inconceivable.

It must also be borne in mind that the General Assembly would have no power to do such a thing. It does not re-

quire argument to establish that an act of the General Assembly resulting in the discharge of prisoners duly sentenced according to law, would be an act amounting to the pardon of such prisoners, or to changing a court judgment, neither of which has the General Assembly any power to do. As clearly indicated in the previous case of *People* v. *McKinley, supra,* changes in the act governing the reformatory cannot be made applicable to those sentenced to that institution before the act of 1933. The mere fact of calling the reformatory a part of the penitentiary system, neither makes it less a reformatory nor empowers the legislature to create a penitentiary out of a reformatory, so far as those incarcerated there before 1933 are concerned.

That the General Assembly did not intend such a result is indicated by the fact that section 6 of the Reformatory act of 1891 was not repealed. This provides for the education of inmates of the reformatory. Furthermore, under section 2 of the Penitentiary act the Department of Public Welfare has power to label the Pontiac institution "with a suitable name as it may deem expedient in light of considerations relating to the age and character of the inmates." It is clear, as was held in *People* v. *McKinley, supra,* pertaining to the want of power of the General Assembly to authorize the transfer of inmates of the reformatory to the penitentiary without the proceeding provided in section 11 of the Parole act of 1917, that the act of 1933 is entirely without effect upon those who were sentenced to the reformatory prior to the enactment of the 1933 act. To hold otherwise would be to declare the act unconstitutional, for reasons indicated. It clearly could not have been the intention of the legislature to make it applicable to those incarcerated there prior to the enactment.

Counsel for respondent say that the result of such a holding would be that since the old act was repealed there is no act by which defendants may be now sentenced to any of the institutions of the State. This result does not follow since the act of 1933 is not retrospective, and, as

to sentences imposed since it went into effect, its application cannot be doubted. The prior act, so far as those committed before 1933 are affected, has not been repealed.

In accord with the clear holding of *People* v. *McKinley, supra,* it must be held here that Goldstein having been, prior to seeking his release on *habeas corpus,* returned to the reformatory at Pontiac, upon completion of his sentence under the murder charge, he is not entitled to discharge, and the respondent had no power or authority under the law to discharge him. For these reasons, and for the further reasons set forth in *People* v. *McKinley, supra,* the writ of *mandamus* is awarded in accordance with the prayer of the petition.

*Writ awarded.*