**UNITED STATES ex rel. PALMER v. RAGEN.**

No. 9169.

Circuit Court of Appeals, Seventh Circuit.

Jan. 25, 1947.

Writ of Certiorari Denied May 5, 1947.

See 67 S.Ct. 1311.

George F. Barrett and William C. Wines, both of Chicago, Ill., for appellant.

Arthur Basse, of Chicago, Ill., for appellee.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The respondent in a habeas corpus proceeding appeals from an order of the District Court discharging appellee. The relator was convicted of burglary in Cook County, Illinois, January 10, 1928 and sentenced, under the Illinois indeterminate sentence law, to imprisonment for a term of from one year to life. The legality of this conviction and sentence is not questioned.

On January 30, 1930 relator was granted an out-of-state parole to Missouri. At that time he signed an agreement with the Parole Board in which he promised to commit no crimes and to abide by the terms and conditions of his parole and the statutes of the state of Illinois. On May 8, 1931, in the state of Washington, he was convicted of the crime of forgery and sentenced to the Washington State Penitentiary. Illinois Parole authorities on May 18, 1931 issued a parole violation warrant for him and on June 18, 1931 declared him in default in the terms of his parole. On January 26, 1934 he was again convicted in Washington and recommitted to the penitentiary for from two to 15 years for burglary. Upon his discharge on February 15, 1938, he was delivered to Illinois and an order was entered by the Parole Board declaring him a parole violator. He was thereupon reincarcerated in the Illinois penitentiary.

Some four years later the relator was granted a second parole effective April 16, 1942. He again executed a parole agreement, agreeing to abide by the terms and conditions of the parole. Following his release on November 2, 1942, relator was

again convicted in the state of Washington, this time of the crime of indecent exposure, and fined $100. Some 15 days later he was returned to Illinois as a parole violator and placed in the Illinois State Penitentiary at Pontiac. He is now in custody serving his sentence under the original conviction of from one year to life for burglary as provided in the Illinois indeterminate sentence law. Ill.Rev.Stat.1945, c. 38, § 801 et seq.

The relator justifies his release by the fact that between 1921 and 1938, upon four different occasions, Illinois prison officials advised the Washington officials that he need not be returned to Illinois and by his own testimony that he received two letters from the Illinois Parole authorities notifying him that he would not be returned to the state. He testified that the first of these letters was received when he was first imprisoned in Washington and the second in 1934. These facts, relator contends, amounted to a waiver of Illinois' right to take him into custody again for violating his parole and to compel him to serve longer on his sentence. The District Court found that these facts amounted to destruction of the power of the state of Illinois to retake him into custody. Relator insists that his confinement now is in violation of the due process provisions of the United States Constitution. Amendment 14.

■ An indeterminate sentence, in Illinois, for a term not exceeding the maximum fixed by law is a definite sentence for the maximum term provided by statute. In The People v. Connors, 291 Ill. 614, 126 N.E. 595, the court said: "The convict has no right to demand that he be discharged before the expiration of such maximum term. * * * The judgment of the court simply carries into effect the penalty prescribed by the Legislature. The execution of this judgment is vested in the executive department of the state. That department is given authority to reduce the duration of imprisonment, subject only to the limitation that it shall not in any case be reduced to less than one year or the minimum term provided by law. Unless the executive decides to shorten the term of imprisonment fixed by the judgment of the court the sentence does not end when the minimum term has been served. * * * If for the

purpose of discipline, education, and training the executive department determines that the convict should be kept under the friendly supervision of the state outside the penitentiary, it cannot be said that this increases the sentence, so long as the term of supervision is less than the maximum term fixed by law. The parole law * * * does not, by any of its provisions, violate any right of a citizen guaranteed by the federal or state Constitution."

This decision was affirmed by the Supreme Court of the United States without opinion in 260 U.S. 695, 43 S.Ct. 11, 67 L.Ed. 468, upon the authority of Dreyer v. Illinois, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 and Ughbanks v. Armstrong, 208 U.S. 481, 28 S.Ct. 372, 52 L.Ed. 582. In the Dreyer case the Illinois indeterminate sentence act was before the Supreme Court. After noting that a similar statute had been held by the Supreme Court of Illinois, in George v. The People, 167 Ill. 447, 47 N.E. 741 not to be in conflict with the state constitution, the court decided that it did not violate in any way the constitution of the United States, saying [187 U.S. 71, 23 S.Ct. 32]: "A local statute investing a collection of persons not of the judicial department, with powers that are judicial, and authorizing them to exercise the pardoning power which alone belongs to the governor of the state, presents no question under the Constitution of the United States. The right to the due process of law prescribed by the 14th Amendment would not be infringed by a local statute of that character." In Ughbanks v. Armstrong, supra, a similar statute of Michigan was under consideration. The Supreme Court announced that the Fourteenth Amendment "was not intended to, and does not, limit the powers of a state in dealing with crime committed within its own borders or with the punishment thereof." The court cited in support of this In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519; Caldwell v. Texas, 137 U.S. 692, 11 S.Ct. 224, 34 L.Ed. 816. The right to parole as created by statute, said the court, constitutes a privilege to the prisoner. This statutory grant of a favor to a convicted criminal is such, commented the court, that the state may attach such conditions to the granting of the favor as

it may determine proper or may entirely withhold it. The court added: "Even after the convict is at large by virtue of the parole granted, he is still deemed to be serving out the sentence imposed upon him, and he remains technically in the legal custody and under the control of the governor, 'subject at any time to be taken back within the inclosure of the prison from which he was permitted to go at large, for any reason that shall be satisfactory to the governor, and at his sole discretion; and full power to retake and return any such paroled convict to the prison from which he was permitted to go at large is hereby expressly conferred upon the governor.'" 208 U.S. 481, 28 S.Ct. 374, 375. Such provisions, said the court, reflect no violation of the federal constitution.

The facts in the present case are not to be distinguished from those involved in People ex rel. Barrett v. Dixon, 387 Ill. 420, 56 N.E.2d 816, 819. In that case the Supreme Court defined the controlling principles governing the case as follows. "It is contended that the State of Illinois lost jurisdiction to arrest and return the prisoner to the penitentiary at Joliet by their failure and neglect to retake him until after the expiration of the term of his maximum sentence. It must be conceded as definitely settled in this State that from the date of his parole violation in December, 1931, he owed the State of Illinois service for the remainder of his maximum sentence, or eight years and approximately three and a half months. People v. Crowe, 387 Ill. 53, 55 N.E.2d 84; Purdue v. Ragen, 375 Ill. 98, 30 N.E.2d 637; People ex rel. Ross v. Becker, 382 Ill. 404, 47 N.E.2d 475; Ill.Rev. Stat.1931, chap. 38, par. 808, sec. 7a. This term could be satisfied only by actual service, unless remitted by some legal authority. People ex rel. Ross v. Becker, 382 Ill. 404, 47 N.E.2d 475; Purdue v. Ragen, 375 Ill. 98, 30 N.E.2d 637; People ex rel. Cassidy v. McKinley, 372 Ill. 247, 23 N.E.2d 50; People ex rel. Kerner v. McKinley, 371 Ill. 190, 20 N.E.2d 498; People ex rel. Crews v. Toman, 367 Ill. 163, 10 N.E.2d 657. There were only two methods provided by law for this unsatisfied sentence to be legally remitted, (1) a compliance with the conditions of his parole followed by a discharge granted by the parole authorities, approved by the Governor (People ex rel. Michaels v. Bowen, 367 Ill. 589, 12 N.E.2d 625); and (2) by a pardon or commutation of sentence by the Governor, the power to issue which cannot be delegated. People ex rel. Brundage v. LaBuy, 285 Ill. 141, 120 N.E. 537; People ex rel. Fullenwider v. Jenkins, 322 Ill. 33, 152 N.E. 549. It is conceded that these are the only methods by which the term of unsatisfied service could be remitted by some legal authority, and that no such authority had been exercised. The failure of officials to perform their duties creates no right in a defendant to have his discharge as a beneficiary of their failure. People v. Crowe, 387 Ill. 53, 55 N.E.2d 84; People ex rel. Kerner v. McKinley, 371 Ill. 190, 20 N.E.2d 498; People ex rel. Courtney v. Thompson, 358 Ill. 81, 192 N.E. 693; People ex rel. Martin v. Mallary, 195 Ill. 582, 63 N.E. 508, 88 Am.St.Rep. 212." The court relied largely upon Anderson v. Corall, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247.

As we said in Davis v. Dowd, Warden, 7 Cir., 119 F.2d 338: "Under repeated decisions, state governmental bodies, who are charged with prosecution and punishment of offenders, are not to be interfered with except in case of extraordinary circumstances. In the ordinary course of events, such officials must be permitted to perform their duties without impediment by the federal government." And in Kelly v. Dowd, Warden, 7 Cir., 140 F.2d 81, 82, we repeated: "The jurisdiction to interfere with the proceedings of state governmental bodies charged with the prosecution and punishment of offenders is an exceedingly delicate one to be exercised with the greatest of care and nicest sense of propriety." In doing so we relied largely upon the pronouncement in Petroleum Exploration v. Pub. Service Commission, 304 U.S. 209, 58 S.Ct. 834, 841, 82 L.Ed. 1294: "The preservation of the autonomy of the states is fundamental in our constitutional system. * * * 'Only a case of manifest oppression will justify a federal court in laying such a check upon administrative officers acting colore officii in a conscientious endeavor to fulfill their duty to the state.'"

So here the legislature, in pursuance of its function of determining the policy for the punishment of crime, has enacted the indeterminate sentence law, and the Supreme Court of the United States, in interpreting that statute, has made its announcement of the validity of the methods prescribed for its execution and enforcement. Thus we have the legislature of the state of Illinois speaking for itself, and the law governing the legality of the actions of enforcement officials having been declared by the highest court of that state, there remains only the question of whether anything that has been done has violated any provision of the federal constitution. We have seen that the Supreme Court of the United States has held that the enactment of the state's indeterminate sentence law and the grant of certain rights thereby to executive officials violate no provision of the United States constitution and we have seen that the Supreme Court of Illinois has held that taking the relator here into custody is, under the Dixon case, not in conflict with the Illinois constitution. It would seem, therefore, that there is little question that no federal question is involved and that the attempt to inject the provisions of the Fourteenth Amendment into the controversy is without basis in law or fact.

The Supreme Court points out in the Dixon case the only two modes of official action by which punishment can be remitted by the state. There is no proof of either such approved official action. Nothing less than the prescribed official act of the Parole Board or the governor can bind the state or bring about a legal surrender of any prisoner or his discharge from service of an unreversed unserved sentence.

Recent decisions of this court are decisive. Under similar facts in United States ex rel. Kimler v. Ragen, Warden, 7 Cir., 147 F.2d 137, the court said: "Under these facts we find no merit in appellant's contention that his full sentence expired in 1940, and that the state of Illinois had no power thereafter to incarcerate him for further service of the 1926 sentence. See People ex rel. Ross v. Becker, 382 Ill. 404, 47 N.E.2d 475; Purdue v. Ragen, 375 Ill. 98, 30 N.E.2d 637." A similar conclusion was reached in Whitten v. Bennett, Ward-

en, 7 Cir., 141 F.2d 295, where at page 298 it was said: "We are considering an Illinois statute (Chap. 38, Sec. 808, Smith-Hurd Ill. Ann.Stats.), which provides in detail for out-of-state paroles and retention of jurisdiction in such instances, and we are bound by the Illinois Supreme Court's interpretation of this statute and the consequences which flow from it. In the case of People v. Becker, 382 Ill. 404, 414, 47 N.E.2d 475, 480, the Supreme Court said: 'Relator also urges that when he was paroled the People of the State waived all right to claim for service unless he, at some future time, returned voluntarily to Illinois. Reliance is placed upon the portion of the Parole Law * * * providing * * *. The argument advanced is that the foregoing provisions apply only in cases where the parole violator returns voluntarily to Illinois. It is sufficient to observe that the statute does not so provide * * *'." It would seem that the announcements in People v. Becker, 382 Ill. 404, 47 N.E.2d 475, and in the Dixon case are decisive of the contention here that the state waived its right to arrest the relator for violation of the conditions of his parole. Still later, in United States ex rel. Turner v. Bennett, 153 F.2d 102, this court renewed the announcement in Whitten v. Bennett, supra. We recently pointed out in United States ex rel. Hunke v. Ragen, 158 F.2d 644, 645, that under People v. Bartley, 383 Ill. 437, 50 N.E. 2d 517, 147 A.L.R. 935, there was no loss of jurisdiction by permitting the paroled convict to leave the state. Similar is United States ex rel. Crist v. Warden, 7 Cir., 157 F.2d 621.

In view of the decisions reviewed, it would seem clear that the state of Illinois, under an indeterminate sentence law which does not offend the Federal Constitution, under the sentence of conviction, has jurisdiction over the relator for the maximum term of his sentence. In further view of the Illinois announcement that there is no waiver of jurisdiction under facts such as these, it follows that until the defendant has served the maximum term, Illinois' jurisdiction over him continues and that the prisoner can be imprisoned legally and constitutionally until that maximum sentence has been served or until he has been re-

leased by parole authorities or by the executive department in accord with the pertinent statutes.

Accordingly the judgment is reversed with directions to dismiss the petition.