(No. 26776.—

THE PEOPLE *ex rel.* James W. Ross, Petitioner, *vs.* C. F.
BECKER, Warden, Respondent.

*Opinion filed March 16, 1943.*

JAMES W. ROSS, *pro se.*

GEORGE F. BARRETT, Attorney General, for respondent.

Mr. JUSTICE WILSON delivered the opinion of the court:

James W. Ross, by an original petition for a writ of *habeas corpus* filed in this court against C. F. Becker, warden of the Illinois State Penitentiary at Menard, sought to obtain his discharge from the penitentiary. The writ issued and the respondent made a return, together with a motion to quash the writ and dismiss the petition. Relator filed an answer and a motion to dismiss and deny respondent's motion. The cause was submitted upon the record thus made.

January 25, 1926, relator, upon his plea of guilty, was convicted of the crime of uttering a fictitious check. The judgment of the circuit court of St. Clair county directed the sheriff of the county to take relator "to the penitentiary of this State at Chester, Illinois, and be delivered to the warden or keeper of said penitentiary, and the said warden or keeper is hereby required and commanded to take the body of said defendant, James Ross alias James Morrisey alias D. L. Stewart and confine him in said penitentiary in safe and secure custody, from and after the delivery hereof until discharged by the Prison Board, as authorized and directed by law, * * * ." The petition alleges that on January 6, 1931, relator was released on a banishment parole issued in pursuance of section 7(a) of the Sentence and Parole Act (Smith's Stat. 1929, chap. 38, par. 808,) wherein he was commanded to leave the State

of Illinois and go to the Commonwealth of Massachusetts to serve his parole under the supervision of the latter's Department of Welfare; that he went immediately to Massachusetts and reported to the proper officer of the Commonwealth; that he made monthly reports to the Department of Public Welfare of this State and that he kept faithfully the terms of his parole until September 10, 1931, when he was discharged from the parole by a court of Massachusetts, which ruled his parole void as of the date he departed from Illinois; that the original sentence, less the statutory allowance for good conduct expired April 24, 1937; that on October 3, 1941, a warrant was filed in the District of Columbia for his rearrest as a parole violator and a fugitive from justice because of an alleged violation of the banishment parole; that on November 7, 1941, an agent of this State brought him from the District of Columbia to Illinois on the requisition of the Governor of the State, as a fugitive, and that on November 10, 1941, he was confined in the Illinois State Penitentiary at Menard. Relator admits that on February 24, 1938, he was found guilty of misdemeanors against the United States by the United States Branch of the Police Court for the District of Columbia, fines were imposed for the offenses and, in default of payment of the fines, ordered to serve 1440 days in the District of Columbia jail. Relator charges that his confinement and restraint were illegal for the reasons, among others, that he had served more than the minimum sentence provided by law when banished on parole in compliance with the applicable statute; that he left this State pursuant to the terms of the parole and, conversely, did not "flee," within the meaning of section 2 of article 4 of the Federal constitution; that he was wrongfully removed from the District of Columbia and brought to this State November 7, 1941, in violation of his constitutional rights, and, further, that this State waived its

claims against him on June 6, 1931, the effective day of his banishment parole.

Respondent's return avers that relator has not served or completed the indeterminate sentence of not less than one nor more than twenty years' imprisonment for the crime of forgery, and that he has not been discharged by the Division of Correction or proper State authorities, conformably to statutory provisions with respect to parole. Answering respondent's return, relator alleges that respondent transcended his statutory authority by causing relator's arrest in the District of Columbia and return to Illinois as a fugitive from justice because of an act committed outside respondent's legal jurisdiction, and that, consequently, the process by which he was arrested and returned to Illinois was void. We observe that relator's answer says: "The petitioner has not questioned or attacked the validity of his commitment to the Illinois State Penitentiary on January 25, 1926." Answering further, relator charges that the statutory provisions pertaining to banishment parole provide that the alleged violator may only be arrested or apprehended "should such prisoner or ward so violating said parole again at any time return to the State of Illinois."

Although relator's pleadings expressly disclaim intent to assail the propriety of the judgment of the circuit court of St. Clair county, he argues that the judgment was insufficient for the reason that it did not definitely fix the place of imprisonment, as required by statute. Contending that the judgment was void and the sentence a nullity for the reason that the court lacked complete jurisdiction, relator argues that he was committed to a nonexistent penal institution, namely, "the penitentiary of this State at Chester, Illinois." The contention is not well taken. At the time of relator's conviction, the prison to which he was committed was commonly designated the Southern Illinois State Peni-

408

tentiary at Chester. (Smith's Stat. 1925, chap. 108, pars. 65, 72; Cahill's Stat. 1925, chap. 108, par. 77.) This designation was repeated in the act consolidating the penitentiaries in force July 1, 1933. (Cahill's Stat. 1933, chap. 108, par. 113.) The precise issue was presented for decision in *People* v. *Buckner,* 281 Ill. 340. The defendant, Buckner, urged that the judgment of the circuit court of Wayne county sentencing him to the "penitentiary at Chester, Illinois," was erroneous, insisting that there was no penal institution at the place named. This court answered the contention, "This criticism of the form of the judgment is without merit. Paragraph 75 of chapter 108, Hurd's Stat. 1916, page 1975, refers to the Southern Illinois penitentiary at Chester. The order granting plaintiff in error [Buckner] a *supersedeas* and permitting him to remain out on bail pending the decision of this court on the case was directed to 'the penitentiary at Chester, Illinois.' It is manifest that public officials understand that there is a penitentiary at Chester." In *People* v. *Mikula,* 357 Ill. 481, the defendant was sentenced to "the penitentiary of this State at Joliet." The contention was made that the judgment was erroneous because it failed to designate the specific place of confinement in accordance with sections 1 and 2 of the Sentence and Parole Act, which provide that the sentence shall be to "the Illinois State Penitentiary." Disposing of the contention adversely to the defendant, Mikula, this court observed that sections 2 and 3 provide for indeterminate sentences for all crimes not enumerated in the first section, namely, treason, murder, rape, and kidnapping, and that section 2 provides every such sentence "shall be a general sentence of imprisonment." Section 3 requires that persons convicted of felony and other crimes punishable by imprisonment in the penitentiary shall "be sentenced to the penitentiary." Neither section requires a specific place of confinement to be fixed. Section 1 of the act in relation to the Illinois State Penitentiary consoli-

dated the institutions heretofore known as the Illinois State Reformatory at Pontiac, and the Illinois Asylum for Insane Criminals at Chester, into a single institution to be known as the Illinois State Penitentiary. Section 3 provides for commitments to be made "to the penitentiary generally." "This statute," the court observed, "not only makes no requirement that the judgment shall definitely name the particular penitentiary to which the convicted person shall be committed, but expressly provides that the sentence shall be to the penitentiary, generally. The Department of Public Welfare has the power to determine in which penitentiary he shall be confined." The error of the trial court in entering the judgment assailed was insufficient to cause a reversal, and the cause was remanded with directions, for the sole purpose of entering a proper sentence. Upon the authority of *People* v. *Buckner, supra*, and *People* v. *Mikula, supra*, the *mittimus* of January 25, 1926, was immune to attack under section 22 of the Habeas Corpus Act.

*People* v. *Wood,* 318 Ill. 388, cannot avail relator. The judgment of conviction directed the sheriff of Pulaski county to deliver the defendant, Wood, to the warden or keeper of the penitentiary at Chester and commanded him to confine defendant in safe and secure custody. Defendant contended that the judgment was insufficient because it neither fixed the place nor the term of imprisonment. The judgment did not actually sentence defendant to imprisonment in the Southern Illinois Penitentiary or in any other penal institution in the State. This court said: "The judgment must definitely fix the place of imprisonment and the place must be one fixed by law. The judgment not only fails to fix the place of imprisonment but it does not in any manner fix the term of imprisonment. * * * When the circuit court shall have entered a proper judgment no reversible error will remain in the record." Here, the judgment of the circuit court of St.

Clair county adjudged that relator be confined in the penitentiary of the State at Chester, and delivered to the warden or keeper of the penitentiary to be confined as authorized and directed by law, not to exceed the maximum term nor less than the minimum term for the crime of forgery. Apart from the fact that *People* v. *Wood* is not parallel to the present case, the sentence entered in the *Wood case* was not void and the cause was remanded for the sole purposes of entering a proper judgment and re-sentencing the defendant.

Sufficiency of the indictment for forgery is not open in this proceeding. The circuit court of St. Clair county had jurisdiction of the subject matter and of the person of the relator and its judgment, even if erroneous in form, is immune to collateral attack. (*People* v. *Fardy,* 378 Ill. 501.) The writ of *habeas corpus* may not be used as a writ of error to review a judgment which may be erroneous but is not void. Nor does the fact that a judgment of conviction by a court having jurisdiction could have been reversed on writ of error necessarily justify resort to a writ of *habeas corpus* for the discharge of the convicted prisoner. *People ex rel. Courtney* v. *Sullivan,* 363 Ill. 34.

Relator's contention that he is now wrongfully imprisoned by respondent on the ground that his sentence has expired is without merit. An indeterminate sentence is for the full term allowed by law for the crime. (*People ex rel. Day* v. *Lewis,* 376 Ill. 509; *People* v. *Webster,* 362 id. 226; *People* v. *Peters,* 246 id. 351.) While on parole a convict cannot be said to be imprisoned in the penitentiary. (*People* v. *Doras,* 290 Ill. 188.) Relator has not completed service of the sentence imposed upon him.

Relator insists that he was not a fugitive from justice since he did not "flee" from Illinois. Clause 2 of section 2 of article 4 of the Federal constitution provides: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another

State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." One is a fugitive from justice, within the contemplation of the quoted constitutional provision, who, having been charged with a crime in the demanding State, leaves the State for any purpose whatsoever. (*Appleyard* v. *Massachusetts,* 203 U. S. 222; *Roberts* v. *Reilly,* 116 id. 80; *Reed* v. *Colpoys,* 99 Fed. (2d) 396, *certiorari* denied; 305 U. S. 598.) A paroled prisoner who has, in violation of parole, left the State in which he was convicted of crime is a person charged with crime in the State where he was convicted and one who has fled from the justice of the State, rendering him subject to extradition. (*Reed* v. *Colpoys, supra.*) Likewise, a paroled prisoner who has left the State of conviction pursuant to the terms of his parole, as here, but later violates his parole, is a person charged with crime and a fugitive from justice subject to extradition. *Reed* v. *Colpoys, supra.*

Relator insists further that the Department of Public Welfare was without authority to issue a banishment parole and, consequently, that the order granting him permission to go to Massachusetts was, in effect, as complete a discharge of the judgment of conviction as a pardon. The Parole Law (Smith's Stat. 1925, chap. 38, par. 807,) at the time of relator's conviction in 1926, provided, in part: "that all prisoners and wards so temporarily released upon parole shall, at all times, until the receipt of their final discharge, be considered in the legal custody of the officers of the Department of Public Welfare, and shall, during the said time, be considered as remaining under conviction for the crime or offense of which they were convicted and sentenced or committed and subject to be taken at any time within the enclosure of such penitentiary, reformatory and institution herein mentioned." The law (par. 808) provided further: "The Department of Public Welfare

may parole a non-resident prisoner or ward, or a prisoner or ward whose family, relatives or friends reside outside of this State, to a person, firm or company in some State other than Illinois, to serve his parole. Such paroled prisoner or ward shall be required to make regular monthly reports in writing to the Department of Public Welfare, obey the rules of said Department of Public Welfare, obey the laws of such other State, and in all respects keep faithfully his parole agreement until discharged as in this act provided by said department. Should ·such prisoner or ward so paroled violate his or her parole agreement, such prisoner or ward so violating such agreement shall from the date of such violation be deemed to owe the State of Illinois service for the remainder of his or her maximum sentence, and should such prisoner or ward so violating said parole again at any time return to the State of Illinois, he or she shall be subject to be again arrested or apprehended on the writ or order of the warden, superintendent or managing head of the penitentiary, reformatory or institution from which such prisoner or ward was paroled with full power and authority in the said Department and its employees and agents and all officers as is provided in other cases to return such parole violator to such ·penitentiary, reformatory or other institution." Provision was also made (par. 810) that the order discharging the prisoner shall operate as a release or commutation of sentence when approved by the Governor.

A parallel situation was presented for decision in *Purdue* v. *Ragen*, 375 Ill. 98. Fred Purdue was convicted of larceny in March, 1927, and sentenced to a term of from one to ten years' imprisonment. In May, 1928, he was granted an out-of-State parole and proceeded to Peru, Indiana, in accordance with its terms. . August 28, 1929, Purdue was sentenced to a term of imprisonment in the Ohio State penitentiary of from ten to twenty-five years for robbery. Later, he was paroled and on March 1, 1933, was arrested

in Michigan for counterfeiting. April 2, 1933, he was convicted in a Federal court and sentenced to ten years at Leavenworth penitentiary. June 1, 1939, upon his release from the last-named place of incarceration, he was turned over to the sheriff to hold for the State of Illinois. Extradition proceedings resulted in his return to this State on June 13, 1939, when he was delivered to the warden of the Illinois State Penitentiary. In an original *habeas corpus* proceeding in this court we held that he was not entitled to be relieved from the remainder of his sentence unless he had received his final discharge from the Department of Public Welfare. We said: "By the provisions of paragraph 808, *supra*, from the time a parole is violated such parolee 'shall be deemed to owe the State of Illinois service for the remainder of his or her maximum sentence.' By obtaining a release under parole and violating it, he cannot be placed in a better position by such breach than by not being placed upon parole. A sentence of imprisonment for crime may only be satisfied by actual service unless remitted by some legal authority." A concession that statutory allowance for good behavior would have entitled relator to seek his discharge on April 24, 1937, would not aid him for the adequate reason he did not apply for a final discharge.

It is insisted that relator cannot be apprehended upon a warden's warrant for his arrest as a parole violator. The applicable statute specifically provides to the contrary, namely, for the apprehension and arrest of a parole violator "on the writ or order of the warden, superintendent or managing head of the penitentiary, * * * from which such prisoner or ward was paroled with full power and authority in the said Department and its employees and agents and all officers as is provided in other cases to return such parole violator to such penitentiary." His apprehension as a parole violator was in conformity with the statute. *Purdue* v. *Ragen, supra; Reed* v. *Colpoys, supra.*

Relator also urges that when he was paroled the People of the State waived all right to claim for service unless he, at some future time, returned voluntarily to Illinois. Reliance is placed upon the portion of the Parole Law (Ill. Rev. Stat. 1941, chap. 38, par. 808,) providing that in the event a paroled prisoner violates his parole agreement he shall, from the date of the violation, be deemed to owe the State service for the remainder of his maximum sentence, and "should such prisoner or ward so violating said parole again at any time return to the State of Illinois, he or she shall be subject to be again arrested or apprehended on the writ or order of the warden, superintendent or managing head of the penitentiary, * * * from which such prisoner or ward was paroled with full power and authority in the said Division of Correction and its employees and agents and all officers as is provided in other cases to return such parole violator to such penitentiary." The argument advanced is that the foregoing provisions apply only in cases where the parole violator returns voluntarily to Illinois. It is sufficient to observe that the statute does not so provide. Provision for rearrest in Illinois is neither expressly nor impliedly made the only mode of effecting the return of a parolee to prison. Extradition, it follows, was an appropriate method of accomplishing his return. *Reed* v. *Colpoys, supra.*

Finally, relator relies upon an order alleged to have been entered by the "Court of Suffolk county, Massachusetts," on September 10, 1931, finding that the State of Illinois waived all right to claim service under the maximum term of his sentence so long as he elected to remain out of this State. He concedes that "said proceedings were but *quasi*-judicial in character" but argues that "the doctrine of *res judicata* should have at least prevented any further action by the Parole Board." Apart from the fact that the record fails to show the proceeding in Massachusetts relied upon by relator, and that, in consequence, the propriety of

the order alleged to have been entered is not open here, our Parole law specifically provides that a prisoner released upon an out-of-State parole continues to owe the State service for the remainder of his maximum term until and unless discharged by an order of the Department of Public Welfare. This, relator never obtained.

The relator is remanded to the custody of the warden.

*Relator remanded.*