WHITTEN v. BENNETT, Warden.

PEOPLE ex rel. FRANKOWSKI v. SAME.

PEOPLE ex rel. DARLING v. SAME.

PEOPLE ex rel. REWITZER v. SAME.

PEOPLE ex rel. TURNER v. SAME.

Nos. 8530–8533, 8537.

Circuit Court of Appeals, Seventh Circuit.

March 8, 1944.

Kenneth N. Whitten, Walter Frankowski, Robert Darling, Alfred Michael Rewitzer, and Paul Turner, of Pontiac, Ill., in pro. per., for appellants.

George F. Barrett, Atty. Gen., for appellee.

Before EVANS, MAJOR, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

These five appeals, in forma pauperis, are from denials by District Judge Adair of their respective petitions for writs of habeas corpus. These five causes were tried below together with nine others. They were distinct and several petitions, but were consolidated for argument by the trial court, and argued together. Such consolidation of hearings is one of the errors assigned on appeal.

This court has ordered that the appeals be permitted to be prosecuted in forma pauperis, but upon a careful reading of all the transcripts has deemed the merits not worthy of the appointment of counsel, the submission of written briefs, and oral arguments for their presentation. We are therefore disposing of the appeals upon our own review of the facts disclosed by the records and research of the pertinent law. The trial court record includes a stenographic report of the entire trial proceedings. A separate recital of the facts in each individual case is made, and of the respective issues raised on the individual appeals.

All the cases involve the point of unconstitutional imprisonment under the Federal Constitution, in cases of reincarceration for parole violations of persons serving state court sentences.

*In re Kenneth Whitten:* On April 16, 1929, when petitioner was only seventeen years of age, he pled guilty to a charge of receiving stolen property and was sentenced to the Illinois State Reformatory, for a term of one to ten years. (He contends that he should have been sent to jail because he had not committed one of the statutory crimes punishable by imprisonment in the reformatory, Par. 759, Ch. 38, Ill.Rev.Stats. 1933.) He states he asked for counsel at the trial, but didn't get it, although a resumé of the trial proceedings states that he persisted in a plea of guilty although advised of his legal rights. On May 3, 1930, he was released on parole. Thereafter he was sentenced in Wisconsin to a term of one to five years, for robbery. On Feb. 16, 1937, a warrant was filed for his arrest by the Illinois authorities, with the Wisconsin authorities, on the ground that petitioner was a parole violator. On May 12, 1940, Whitten asked the withdrawal of this warrant, issued Jan. 14, 1931, which was a duplicate of the warrant of May 12, 1940, which request was denied. On June 19, 1940, he was returned to Illinois as a parole violator and reincarcerated. At a September, 1940 hearing of the Parole Board, it was determined he should serve two more years from June, 1940, and so, with good time, he should have been released Oct. 29, 1941, but then a new Parole Board changed the former decision and decided he had to serve his full maximum original sentence. In October, 1941, his application for parole was denied, and he was held for the maximum sentence, which, with good time, will expire February 16, 1945.

The issues which this petitioner raises are as to the trial below, the change of the name of the Reformatory, thereby making the mittimus illegal, and his reincarceration after the expiration of his original sentence.

*In re Walter Frankowski:* Mr. Frankowski was sentenced September 18, 1929, when he was 24 years of age, to a term of one year to life, at the Reformatory, on the charge of burglary, on which charge there was a verdict of guilt. He was represented by counsel at the trial. He was paroled on November 18, 1933, and returned September 10, 1934. He was again paroled, July 10, 1935, and on June 20, 1936, was granted permission to leave the state. In 1939, he asked for a discharge, but was told he could not obtain one while out of the state. In November, 1939, he was brought back from California as a parole violator and on Jan. 16, 1940, was declared to be a parole violator. On Nov. 15, 1940, he was paroled to California, and in April, 1941, he was returned from California for failure to make the required reports, and on Sept. 16, 1941, he was found to be defaulted on out of state parole, and his case was continued to November, 1945. In May, 1942, he was sent to the Diagnostic Depot of the Penitentiary. On June 15, 1942, he was declared a parole violator and his case continued to April 23 (the year is stated differently in the record as 1946 or 1947). On August

17, 1943, he was denied habeas corpus by the Criminal Court of Cook County, and on September 17, 1943, the Illinois Supreme Court denied him habeas corpus. The Attorney General's answer states that the petitioner served four terms in jail while out on parole, three of them in California, and one in Washington.

The issues presented by this petitioner are: (1) Illegal imprisonment because of the change of name of the Reformatory; (2) he claims that mere parole out of the state causes the State of Illinois to lose jurisdiction of the parolee, citing People ex rel. Barrett v. Bartley, 383 Ill. 437, 50 N.E. 2d 517, as authority.

*In re Robert Darling:* Robert Darling, on December 1, 1925, at the age of 17, was sentenced to the Reformatory for a term of from three to twenty years, on a plea of guilty to the charge of robbery. In May 1931, he was paroled to Los Angeles, California, from where he sent reports until July, 1932, when he was sentenced on a charge of robbery, to a term of five years to life. On Jan. 16, 1933, the Illinois authorities declared him to be a parole violator, and he waived extradition and was returned in April, 1941, and in June was reincarcerated. In June of 1943, he sought and obtained a writ of habeas corpus in the state court, which writ effected his transfer from one branch of the penitentiary to another branch.

The issues which he raises are: (1) He is improperly held in the penitentiary after the change of the Reformatory's name; (2) an out of the state parole was a waiver of the Illinois authorities' jurisdiction to declare him a parole violator.

*In re Alfred Rewitzer:* On December 18, 1930, petitioner pled guilty to a burglary charge, and he started serving his sentence, January 28, 1931, at the Reformatory. On November 13, 1933, he was paroled and disappeared. On September 25, 1934, a warrant was issued for his arrest as a parole violator because he broke into a home and participated in a robbery. On October 3, 1934, he was found guilty of burglary in California and sentenced to a term of one to fifteen years and returned to Illinois at the expiration of the term. On July 7, 1939, he was placed in the Illinois penitentiary, and on September 15, 1939, he was declared a parole violator. On July 20, 1943, he was released on habeas corpus for reincarceration in the correct penitentiary.

The issues which he raises are lack of counsel at the time of trial and the change of the name of place of incarceration.

*In re Paul Turner:* Mr. Turner alleges that on March 5, 1925, when he was 23 years of age, he was sentenced, on a plea of guilty to a charge of burglary, to the Illinois Reformatory, by an Illinois court. In 1928, he was paroled, and from June, 1931-1932, he was in the State of Kansas and sent in 12 parole reports; he wrote for more and received none and so assumed his parole was terminated and he was discharged. In 1928, he was arrested in Kansas (at which time the Illinois authorities refused to take him back) and was sentenced to a term of one to ten years on a plea of guilty to the charge of forgery. He went to prison in Kansas on May 18, 1928, and on July 2, 1928, the Illinois authorities asked for him, but withdrew their request, June 18, 1931. He was paroled from the Kansas penitentiary, June 21, 1931, and later obtained a conditional pardon from Kansas. He says the Pontiac records show "Discharged, 19—" with the last two figures erased. On Nov. 19, 1934, he was arrested again in Kansas and given a ten to twenty year sentence for burglary. After serving his minimum sentence, he was sent back to Illinois and declared a parole violator, June 16, 1941, and placed in jail.

Mr. Turner's contentions are: (1) His trial with 14 others in the proceedings below was erroneous, and the court's requiring all the petitioners to remain handcuffed was unfair; (2) the changing of the name of the prison from Pontiac Reformatory to Penitentiary makes his recommitment there illegal; (3) the attorneys appointed by the trial court to represent him in the habeas corpus were totally inexperienced in such matters; (4) his original 20 year sentence under which he is now being held has expired, because a 20 year term (with deductions for good time) is served in 11 years and 3 months; (5) reincarceration is inflicting double jeopardy on him since he has served his original minimum term which the Parole Board placed at four years.

█ *Legality of Imprisonment by Virtue of Apprehension for Violation of Parole in Foreign State.* Appellants contend that their release on out-of-state paroles ipso facto terminated the Parole Authorities' power to order their seizure and return to Illinois for service of the remainder of the

sentences. There is no merit in this contention. We are considering an Illinois statute (Chap. 38, Sec. 808, Smith Hurd Ill. Ann.Stats.), which provides in detail for out-of-state paroles and retention of jurisdiction in such instances, and we are bound by the Illinois Supreme Court's interpretation of this statute and the consequences which flow from it. In the case of People v. Becker, 382 Ill. 404, 414, 47 N.E.2d 475, 480, the Supreme Court said:

"Relator also urges that when he was paroled the People of the State waived all right to claim for service unless he, at some future time, returned voluntarily to Illinois. Reliance is placed upon the portion of the Parole Law * * * providing * * *. The argument advanced is that the foregoing provisions apply only in cases where the parole violator returns voluntarily to Illinois. It is sufficient to observe that the statute does not so provide. * * *"

■ *Effect of Passage of Time Provided for in Term, but Where Full Time Has Not Been Served.* The claim is made by appellants that since the term, i. e., ten years, has expired by virtue of the passage of ten years from the date of imposition of sentence, they can not be reincarcerated, even though they have not served the ten years, due to parole. These appellants were paroled, and, after committing subsequent crimes, were reapprehended and reincarcerated as parole violators, and are now serving time on their original terms. Although the original ten years—the term varies in each case—have expired, their individual sentences still are enforceable due to the fact that they have not served their full sentences. In Purdue v. Ragen, 375 Ill. 98, 30 N.E.2d 637, 638, the court said:

"The claim is made by petitioner that the period of his imprisonment has ended, first, because of the lapse of time * * *. The petitioner was granted a parole * * *. There is nothing in paragraph 808, supra, providing that a prisoner may be discharged upon making reports for a period of time * * * but, on the contrary, he is required to make monthly reports and keep his parole until discharged as provided by law; and paragraph 807, supra, provides that prisoners temporarily released upon parole shall, until the receipt of their final discharge, be considered in legal custody * * *."

The Act, Sec. 808, provides:

"Should such prisoner * * * violate his * * * parole agreement, such prisoner * * * shall from the date of such violation be deemed to owe the State of Illinois service for the remainder of his * * * maximum sentence, and should such prisoner * * * again at any time return to the State of Illinois, he * * * shall be subject to be again arrested or apprehended * * * and * * * he * * * shall be detained in said penitentiary * * * to serve the maximum * * * term * * *."

In People v. Becker, 382 Ill. 404, 410, 47 N.E.2d 475, 478, the Supreme Court said:

"Relator's contention that he is now wrongfully imprisoned by respondent on the ground that his sentence has expired is without merit. An indeterminate sentence is for the full term allowed by law for the crime. * * * While on parole a convict cannot be said to be imprisoned in the penitentiary. * * * Relator has not completed service of the sentence imposed upon him."

To same effect, see Reed v. Colpoys, 69 App.D.C. 163, 99 F.2d 396.

For the denial of a similar contention under the Federal Act, see this court's recent opinion in Dolan v. Swope, 7 Cir., 138 F.2d 301.

■ *Effect of Change of the Name of Place of Imprisonment from Reformatory to Penitentiary.* The appellants contend that before 1933 at the time of their respective sentences they were sentenced to the "Illinois State Reformatory" which institution's name, in 1933, was by legislation changed to "Illinois State Penitentiary." They therefore claim, since there is no longer a Reformatory, it is impossible to hold them under their sentences. This same contention has been overruled by the Illinois Supreme Court several times.

In People v. McKinley, 372 Ill. 247, 23 N.E.2d 50, it was held:

"The Penitentiary act of 1933 does not repeal the Parole act as to prisoners sentenced to the Pontiac reformatory prior to 1933 nor does it effect any change in the status of such prisoners without their being transferred to the penitentiary as provided in section 11 of the Parole act of 1917, and a prisoner who is returned to the reformatory to complete a sentence for robbery after having served a term in the penitentiary for another crime is not entitled to be discharged because the reformatory, under the Penitentiary act, had become a part of the penitentiary system."

See, also, Purdue v. Ragen, 375 Ill. 98, 30 N.E.2d 637.

The foregoing contentions are the chief ones raised by the respective appellants, and we have considered and disposed of them, even though we are of the belief that it was not necessary for a Federal court so to do.

 There was no ground on which to predicate a Federal court application for habeas corpus petition in any of the instant cases.

Primarily, lack of jurisdiction is assertable because state court remedies were not exhausted. We will content ourselves on this point with a single reference, the per curiam opinion of the United States Supreme Court, announced in the case of Ex parte Hawk, 64 S.Ct. 448, wherein there appears a review of many authorities on the necessity for exhaustion of state court remedies.

Secondly, the records do not reveal a "certificate of probable cause" required by the statute, 28 U.S.C.A. § 466.

The order of the District Court quashing the petitions is affirmed.