**UNITED STATES ex rel. JACKSON v. RAGEN, Warden.**

No. 8784.

Circuit Court of Appeals, Seventh Circuit.

July 2, 1945.

Harold Jackson, pro se.

George F. Barrett, Atty. Gen. (William C. Wines, Asst. Atty. Gen., of counsel), for appellee.

Before EVANS, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The petitioner-appellant filed in the District Court for the Northern District of Illinois, Eastern Division, a petition for habeas corpus against the respondent, warden of the Illinois State Penitentiary at Joliet, Illinois. The petitioner had filed his petition first in the Supreme Court of Illinois, where it was denied. He had then petitioned the Supreme Court of the United States for certiorari, which was denied.

In the District Court the respondent filed a motion to dismiss which was sustained, but the court granted the petitioner's motion for a certificate of probable cause. The petitioner appealed.

In the Circuit Court of Marion County, Illinois, on May 15, 1914, the petitioner was found guilty of robbery and was sentenced to be confined in "the Southern Illinois Penitentiary at Chester, Illinois." Petitioner was confined there until July 11, 1919, when he was transferred to the State Penitentiary at Joliet, Illinois by order of the Director of Public Welfare. Three days later the Governor approved the transfer. The petitioner served at Joliet until March 1, 1932, when he was paroled on condition that he go to Indiana.[1]

While in Indiana, the petitioner was convicted and sentenced for assault and battery with intent to rob. He served five years and was paroled. Later he was convicted and sentenced to the United States prison at Leavenworth, Kansas, for violation of the Dyer Act, 18 U.S.C.A. § 408. He was released and convicted again of armed robbery in Michigan. On July 15, 1941, by means of extradition, petitioner was involuntarily returned to Illinois as a parole violator and confined in the State Penitentiary at Joliet, Illinois, where he is now confined.

The petitioner objects to his confinement first because he says he was sentenced to the State Penitentiary at Chester, Illinois, whereas the prison was described correctly as the Southern Illinois Penitentiary and was located at Menard; therefore he was sentenced to a non-existent prison. It is true the prison is within the corporate limits of Menard which adjoins the city of Chester, Illinois. In the judgment of the trial court, the petitioner was sentenced to be confined in "the Southern Illinois Penitentiary at Chester, Illinois."

On this point the Supreme Court of Illinois has decided against the petitioner. In People ex rel. Ross v. Becker, 382 Ill. 404, 47 N.E.2d 475, 477, the same contention was made where the judgment was that the defendant should be confined in "the penitentiary of this State at Chester, Illinois." The Supreme Court said: " * * * The contention is not well taken. At the time (1926)[2] of relator's conviction, the prison to which he was committed was commonly designated as the Southern Illinois State Penitentiary at Chester. * * *"

In the case at bar the judgment of the Circuit Court of Marion County, Illinois, was that the petitioner be confined in "the Southern Illinois Penitentiary at Chester, Illinois." "It is manifest that public officials understand that there is a penitentiary at Chester." People v. Buckner, 281 Ill. 340, 352, 117 N.E. 1023, 3 A.L.R. 1323. The judgment of the trial court sufficiently designated the place of confinement which was a well known place fixed by law.

The petitioner relies upon the description of the prison contained in the mittimus as "the State Penitentiary at Chester, Illinois." The mittimus is not the source of authority for confining the petitioner. It is only an abstract of the judgment. People ex rel. v. Graydon, 329 Ill. 398, 401, 160 N.E. 748. The judgment is the authority for confining the petitioner. People v. Wood, 318 Ill. 388, 149 N.E. 273. A mittimus is like an execution in a civil suit. If the judgment is valid the confinement of the prisoner in accordance with the judgment cures any defect in the mittimus. The judgment sufficiently described the place of confinement, the mittimus properly abstracted it, and the petitioner's incarceration in the Southern Illinois State Penitentiary at Chester, Illinois, was legal in every respect.

The petitioner's next contention is that when he was transferred from the Southern Illinois Penitentiary to the State Penitentiary at Joliet by order of the Director of Public Welfare, the Governor did not then approve of the transfer as he was by law required to do, but did approve three days later, so that petitioner was denied due process of law as guaranteed by the

---

[1] " * * * Should such prisoner or ward so paroled violate his or her parole agreement, such prisoner or ward so violating such agreement shall from the date of such violation be deemed to owe the State of Illinois service for the remainder of his or her maximum sentence, and should such prisoner or ward so violating said parole again at any time return to the State of Illinois, he or she shall be subject to be again arrested or apprehended on the writ or order of the warden, * * *." Smith-Hurd Ill.Ann.Stat. Chap. 38, § 808 (1943).

[2] The designation in 1914 when petitioner was convicted was "Southern Illinois State Penitentiary." Smith-Hurd Ann. Stat. Chap. 108, § 55 (1913); Id., Chap. 108, § 56 (1916).

Fourteenth Amendment. This is a ridiculous contention. If it were valid, it would not entitle the petitioner to release, and all we could do would be to turn him over to the State authorities to take him back to Southern Illinois Penitentiary to start over again. People v. Mikula, 357 Ill. 481, 485, 192 N.E. 546. Due process of law is not remotely involved in this proceeding. No authority has been cited to us, but we daresay the ministerial act of the Governor's approval could be made after the order of transfer was issued by the Director.

 Finally the petitioner contends that he did not voluntarily return to Illinois, and although he was a flagrant parole violator, the State of Illinois had no right to bring him back to Illinois involuntarily by extradition and confine him again. This contention of the petitioner has been decided adversely to him by the Supreme Court of Illinois in People ex rel. Ross v. Becker, supra. In that case a parole violator was returned involuntarily by extradition. The Supreme Court of Illinois said: "Relator also urges that when he was paroled the People of the State waived all right to claim for service unless he, at some future time, returned voluntarily to Illinois. Reliance is placed upon the portion of the Parole Law (Ill.Rev.Stat.1941, chap. 38, par. 808,) providing that in the event a paroled prisoner violates his parole agreement he shall, from the date of the violation, be deemed to owe the State service for the remainder of his maximum sentence, and 'should such prisoner or ward so violating said parole again at any time return to the State of Illinois, he or she shall be subject to be again arrested or apprehended on the writ or order of the warden, superintendent or managing head of the penitentiary, * * * from which such prisoner or ward was paroled with full power and authority in the said Division of Correction and its employees and agents and all officers as is provided in other cases to return such parole violator to such penitentiary.' The argument advanced is that the foregoing provisions apply only in cases where the parole violator returns voluntarily to Illinois. It is sufficient to observe that the statute does not so provide. Provision for rearrest in Illinois is neither expressly nor impliedly made the only mode of effecting the return of a parolee to prison. Extradition, it follows, was an appropriate method of accomplishing his return."

This is ample authority for the return and incarceration of the petitioner in 1941. This week we approved this authority on this point. United States ex rel. Lyons v. Ragen, 7 Cir., 150 F.2d 53.

 The fact that the construction of this statute by the Supreme Court of Illinois was later adopted by the legislature in an amendment [3] presents no question of the ex post facto character of the statute as amended. The law was not changed by the legislature. The amendment only clarified the statute's terms to conform to the Supreme Court's construction of the statute. When the State of Illinois returned the petitioner and imprisoned him, it was acting in accordance with the then existing law of Illinois.

The District Court properly dismissed the petition as the contentions of the petitioner were clearly insufficient under the law of Illinois.

The judgment is affirmed.

---

[3] Outside of formal changes, the statute was amended to provide, "Should such prisoner or ward so violating said parole be returned to this State * * *." Laws 1943 Vol. I, p. 591, section 1, Smith-Hurd Stats. c. 38, § 808.