(No. 30478.— <span style="background:black"> </span>
THE PEOPLE *ex rel.* John Richardson, Petitioner, *vs.* JOSEPH
E. RAGEN, Warden, Respondent.

*Opinion filed May 20, 1948.*

JOHN RICHARDSON, *pro se.*

GEORGE F. BARRETT, Attorney General, of Springfield,
(WILLIAM C. WINES, of Chicago, of counsel,) for re-
spondent.

Mr. JUSTICE THOMPSON delivered the opinion of the
court:

John Richardson, petitioner, an inmate of the Illinois
State Penitentiary at Joliet, seeks to obtain his discharge

by an original petition for a writ of *habeas corpus* filed in this court against Joseph E. Ragen, warden of said penitentiary. The writ issued, return was made and petitioner filed a reply. The cause is before us on the record and briefs filed by both parties.

Richardson, in September, 1939, was convicted of the crime of larceny of a motor vehicle in the criminal court of Cook County and sentenced to the penitentiary for a term of not less than one nor more than twenty years. He commenced the service of his sentence at Joliet on October 5, 1939, and was released on parole December 24, 1945. On May 28, 1946, while on parole he was inducted into the United States Army. A recommendation for final discharge was made to the Division of Paroles on August 16, 1946, and certificate of discharge was issued on September 17, 1946, but before delivery of this instrument to the prisoner, he was, on October 2, 1946, arrested in the city of Chicago in a stolen automobile with two other men, one of whom was an ex-convict. A loaded revolver was found in the car and petitioner was found to be A.W.O.L. from the army. He was held in jail and when he appeared before the court on October 29, 1946, he was surrendered to the Division of Supervision of Parolees on a parole-violation warrant issued October 9, 1946, the army authorities advising they would prefer that he be returned as a parole violator. He was returned to the Illinois State Penitentiary on November 8, 1946, and given a hearing by the Division of Correction on the question of parole violation. Upon such hearing he admitted the violations of his parole. After this hearing, on December 10, 1946, an order was entered by the Division of Correction revoking the order of September 17, 1946, granting final discharge, which had never been delivered.

The petition alleges that in March, 1946, petitioner was inducted into the United States Army, that for the purpose of permitting him to enter the army the parole authori-

ties suspended their supervision over him and at the same time also agreed that he would receive a final discharge from his sentence of imprisonment within six months after his induction into the army; that in accordance with said promise, said discharge was issued and was approved and signed by the Governor on September 17, 1946, but was never delivered to the petitioner or to anyone on his behalf.

It is further alleged that several weeks after the discharge was issued, and while the petitioner was still serving in the army, he was arrested in Chicago while riding in a stolen automobile and held in the county jail until November 8, 1946, and subsequently transferred to the Illinois State Penitentiary; that thereafter, on December 10, 1946, his discharge was unlawfully revoked.

Respondent's return to the writ sets up the judgment of conviction of the petitioner, commitment to the penitentiary and his release on parole. The return further alleges that while petitioner was at large upon parole, he was drafted into the army, departed from an army post at Fort Knox, Kentucky, without leave, became involved with a woman, and was arrested while riding in an automobile with armed companions. The return further alleges that before the petitioner had received his certificate of final discharge from his sentence of imprisonment, he was, because of his aforesaid conduct, declared a parole violator, that he was accorded a hearing before the Division of Correction, and, upon such hearing, admitted said violations of his parole. Petitioner's reply to the return did not deny his desertion from the army or of the other alleged parole violations, and did not deny that upon a hearing before the Division of Correction, he had admitted such parole violations.

The petitioner does not challenge the validity of his original imprisonment under the judgment and sentence of the criminal court. Nor does he deny the right of the Division of Correction to supervision and jurisdiction over

him during the time he was on parole prior to his induction into the army, but claims that he has been improperly reimprisoned as a parole violator, and therefore is entitled to be discharged. This contention is based on subsection 2 of section 22 of the Habeas Corpus Act, which provides that a prisoner in custody under judicial process may be released, "Where, though the original imprisonment was lawful, yet, by some act, omission or event which has subsequently taken place, the party has become entitled to his discharge." Ill. Rev. Stat. 1947, chap. 65, par. 22.

Petitioner contends that upon his induction into the army the Division of Correction relinquished jurisdiction and control over him so long as he remained in the armed forces of the United States, and agreed with him that after he had served six months in such armed forces he would be given a discharge releasing him from the judgment and sentence under which he was committed to the penitentiary. He further contends that he served six months in the army and was entitled to his discharge, as promised, that at the time he was returned to the penitentiary as a parole violator he was still serving in the army, that his discharge had previously been issued, as promised, and had been approved and signed by the Governor, that it operated as a release or commutation of his sentence, notwithstanding such discharge was never delivered to him or to anyone on his behalf, and that the action of the Division of Correction in revoking such discharge was a violation of his constitutional rights. He also contends that the State of Illinois can have no jurisdiction over him until he is discharged from the armed forces of the United States, and therefore his imprisonment in the Illinois State Penitentiary, as a parole violator, on November 8, 1946, when he had not been released from service in the army, was unwarranted and unlawful.

It is the contention of respondent that petitioner's inchoate expectancy of final discharge was conditioned upon

his abiding by the terms of his parole agreement and receiving the Governor's act of commutation, that actual receipt by a paroled prisoner of the Governor's act of commutation is prerequisite to the finality of his discharge, that petitioner has violated his parole agreement and has not received the Governor's document, and therefore is not entitled to be discharged from imprisonment.

The petitioner was convicted in 1939, and at that time, under section 7 of the Parole Act, (Ill. Rev. Stat. 1939, chap. 38, par. 807,) the Department of Public Welfare was authorized to establish rules and regulations under which prisoners in the Illinois State Penitentiary might be allowed to go upon parole. It was provided, however, that a prisoner released on parole should, at all times until the receipt of his final discharge, be considered in the legal custody of the officers of the Department of Public Welfare and as remaining under conviction for the crime or offense of which he was convicted and sentenced and subject to be taken within the inclosure of the penitentiary from which he had been paroled. Full power to enforce such rules and regulations and to retake and reimprison any inmate upon parole was conferred upon the officers and employees of the Department of Public Welfare. Section 9 of the same act made it the duty of the Department of Public Welfare to keep in communication, as far as possible, with all prisoners on parole, and provided that "when, in the opinion of the Department of Public Welfare, any prisoner or ward who has served not less than six months of his or her parole acceptably (the Department of Public Welfare may require a longer service upon parole) has given such evidence as is deemed reliable and trustworthy that he or she will remain at liberty without violating the law and that his or her final release is not incompatible with the welfare of society; and whenever it shall be made to appear to the satisfaction of the Department of Public Welfare that any prisoner or ward

has faithfully served his or her term of parole and the Department of Public Welfare shall have information that such prisoner or ward can safely be trusted to be at liberty and that his or her final release will not be incompatible with the welfare of society, the Department of Public Welfare shall have power to cause to be entered of record in its department an order discharging such prisoner or ward for or on account of his or her conviction or commitment, which said order when approved by the Governor shall operate as a complete discharge of such prisoner or ward, in the nature of a release or commutation of his or her sentence, to take effect immediately upon delivery of a certified copy thereof to the prisoner or ward, and the clerk of the court in which the prisoner or ward was convicted or committed shall, upon presentation of such certified copy, enter the judgment of such conviction or commitment satisfied and released pursuant to said order."

The powers and duties which were, by the Parole Act, vested in the Department of Public Welfare at the time of petitioner's conviction in 1939, have, by subsequent action of the legislature, been transferred to the Division of Correction of the Department of Public Safety, but with that exception there has been no substantial change in the above-mentioned provisions of the parole law. Ill. Rev. Stat. 1947, chap. 38, pars. 807 and 810.

There is nothing in sections 7 or 9 or any other section of the Parole Act providing that a paroled prisoner who has been inducted into the armed forces of the United States shall receive a final discharge from his sentence of imprisonment in the event he has not been discharged from such military service within six months after his induction therein; and there is nothing in the statute authorizing or empowering the parole authorities, or any officer or employee thereof to make any such rule, regulation, promise or agreement. Section 9 authorizes the Division of Cor-

rection to enter an order of final discharge only in cases where the prisoner has faithfully served his term of parole and the Division of Correction has information that he can safely be trusted to remain at liberty without violating the law and that his final release will not be incompatible with the welfare of society. The statute clearly contemplates that it is only such prisoners who are to receive a final discharge. We do not see how it can reasonably be said that a prisoner who, since being paroled, has deserted from the army and whose conduct has been such as is set forth in respondent's return, is a person who can be safely trusted to be at liberty without violating the law or a person whose final release will not be incompatible with the welfare of society. Any construction of the Parole Act which would compel the Division of Correction to deliver to such a prisoner a certified copy of an order, approved by the Governor and entered by the Division, releasing him from his sentence of imprisonment, and which would prevent the Division of Correction under such cirumstances from revoking the order of discharge, by and with the approval of the Governor, would be contrary to the manifest spirit and intent of the statute and would tend to defeat rather than to promote the object and purposes for which it was enacted. Section 9 provides that the final discharge is to take effect immediately *upon delivery* of a certified copy thereof to the prisoner. A final discharge under the provisions of section 9 is somewhat like a pardon, and in the case of *United States.* v. *Wilson,* 32 U.S. 150, 7 L. ed. 640, it was stated, more than a hundred years ago, and has never since been disputed, that a pardon is a deed to the validity of which delivery is essential.

The instant case is, to a certain extent, somewhat analogous in principle to that of *Purdue* v. *Ragen,* 375 Ill. 98. In that case the prisoner was granted an out-of-State parole and handed thirteen sets of monthly report blanks and a

notice stating, in substance, that he had been granted a parole upon condition that he should proceed to Peru, Indiana, where he should abide by all of the conditions of his release for a period of one year, and upon receipt of the thirteenth report, a final discharge would be mailed to him. The prisoner proceeded to Peru, Indiana, and submitted thirteen monthly reports, but never received a discharge from the parole authorities. He afterwards violated his parole, and upon being returned to Illinois as a parole violator, claimed that his period of punishment had ended because he had complied with the conditions of his parole for one year and had submitted thirteen monthly reports. It was there held by this court that under the provisions of the Parole Act, he was not entitled to be relieved of the balance of his sentence unless he had received his final discharge from the Department of Public Welfare.

There are only two methods provided by law for an unsatisfied sentence to be remitted. (*People ex rel. Neville* v. *Ragen*, 396 Ill. 565; *People ex rel. Ross* v. *Ragen*, 392 Ill. 465.) One is by a pardon or commutation of sentence by the Governor. The other is by discharge of the prisoner as provided by section 9 of the Parole Act. Petitioner's sentence for larceny of a motor vehicle has not been terminated in a manner provided by law, and until it has been so ended he owes the State service for the remainder of his maximum sentence.

Petitioner's contention that the Division of Correction had no authority to retake and reimprison him as a parole violator on November 8, 1946, because he had not prior thereto been discharged from service in the armed forces of the United States is based on the theory that the Division of Correction lost all jurisdiction over him upon his induction into the army and could not regain such jurisdiction so long as he continued to serve in the army. If this were a controversy between the parole authorities of this State and the military authorities of the United States,

each contending for the possession of the petitioner, the military authorities, no doubt, would be entitled to rely upon the fact that the Division of Correction had temporarily suspended its supervision over the petitioner in order to permit his unhampered service in the army. To hold that petitioner may successfully urge this contention when the military authorities are ·not seeking his custody and have made no demand for his surrender is to announce the rule, untenable in our opinion, that a parolee who has been inducted into the armed forces of the United States may desert therefrom and commit one or more criminal offenses without thereby subjecting himself to reimprisonment as a parole violator. The Division of Correction's temporary suspension of jurisdiction over the petitioner was, as he avers, for the period of time during which petitioner might serve in the armed forces of the United States. Such temporary suspension was not for the period of time during which he might be absent without leave and in desertion from such armed forces. A soldier is not serving in the army at the same time that he is absent without leave and a deserter from the army. Petitioner's contention that he was serving in the armed forces of the United States at the time of his arrest as a parole violator is founded on the unsound theory that he was serving in the army at the same time that he was absent without leave and a deserter therefrom. By deserting from the army the petitioner, in effect, so far as his status as a parolee was concerned, invalidated the Division's reliquishment of jurisdiction over him, and petitioner was then in no better position than a parolee who had never been taken into the army.

It is contended by the petitioner that a certificate of final discharge was issued on September 17, 1946, which was approved by the Governor and that the board had no right to revoke this parole even though he had violated the law after that date. The parole was to take effect and be in force upon the delivery of the certified copy of the

discharge to the petitioner. The final discharge had never been delivered and after the board, on December 10, discovered petitioner's arrest and violations, the order of September 16, 1946, was revoked. This brings before us squarely the proposition as to whether or not actual receipt by a paroled prisoner of the Governor's act of commutation is prerequisite to the finality of the prisoner's discharge. As we have heretofore pointed out in the case of *Purdue* v. *Ragen,* 375 Ill. 98, above cited, the statute provides "that prisoners temporarily released upon parole shall, *until the receipt of their final discharge,* be considered in legal custody of the officers of the Department of Public Welfare." From any phase of this case, it is apparent that the petitioner had not received his final discharge, and for that reason the parole board, with the approval of the Governor, had a right to rescind the order of September 17, 1946, when the misconduct of the parolee was discovered and it was therefore proper to revoke the order of final discharge, which had not been delivered.

Section 7 of the Parole Act, (Ill. Rev. Stat. 1947, chap. 38, par. 807,) insofar as that part is pertinent here, provides "that all prisoners and wards so temporarily released upon parole, shall, at all times, until the receipt of their final discharge, be considered in the legal custody of the officers of the Division of Correction, and shall, during the said time, be considered as remaining under conviction for the crime or offense of which they were convicted and sentenced or committed and subject to be taken at any time within the enclosure of such penitentiary, reformatory and institution herein mentioned." And it is also provided in section 9, "said order when approved by the Governor shall operate as a complete discharge of such prisoner or ward, in the nature of a release or commutation of his or her sentence, to take effect immediately upon delivery of a certified copy thereof to the prisoner or ward, and the clerk of the court in which the prisoner or ward was convicted

or committed shall, upon presentation of such certified copy, enter the judgment of such conviction or commitment satisfied and released pursuant to said order."

It will be observed that in section 7, prisoners temporarily released upon parole shall, until receipt of their final discharge, be considered in the legal custody of the officers of the Division of Correction. And, further, in section 9, the commutation of sentence is to take effect upon delivery of a certified copy thereof to the prisoner or ward. There is a further duty, as provided by this section, that upon presentation of such certified copy, the clerk shall enter the judgment of such conviction or commitment satisfied and released pursuant to said order.

From the plain language of the statute, in both sections above referred to, it is specifically provided, in any event, that the release or commutation of sentence takes effect upon delivery of a certified copy thereof to the prisoner or ward. Upon the theory that every "indeterminate sentence" is, in legal contemplation, a sentence for the maximum possible term prescribed by the judgment of conviction, Illinois parole laws have been held constitutional by this court and the Supreme Court of the United States. A parole is considered as an act of grace and not as a matter of right, and the convicted person may be released on condition that he abide by the promise he makes. In order to obtain such parole he will, after a specified number of years, receive the Governor's act of commutation of his sentence. *Dreyer* v. *Illinois,* 187 U.S. 71, affirming 188 Ill. 40.

Illinois has chosen through its statute, as construed by this court and through the regulations of the parole board, which are adopted as a part of the Governor's act of commutation, to make actual physical receipt by the prisoner of the act of commutation the instant at which he is free from liability to be reincarcerated for known or admitted parole violations.

Since the Illinois Parole Act (Ill. Rev. Stat. 1947, chap.

38, pars. 801-816,) has been held constitutional only upon the theory that it provides administrative agencies and administrative procedure to assist the Governor in his exercise of his power of executive clemency by commutation, petitioner's claims of promises on the part of parole authorities that he would be discharged upon fulfillment of conditions specified by them, even if such claims of such promises be true, are without legal effect; for the Illinois rule is clear that no unauthorized commitments, unauthorized action or negligent inaction upon the part of administrators of the parole law (other than the Governor himself) can relinquish any right of the State of Illinois to insist upon service of sentence by actual confinement in the penitentiary if parole is breached. Numerous decisions of this court and of the Circuit Court of Appeals for the Seventh Circuit sustain this view of the Illinois Parole law. *People ex rel. Barrett* v. *Dixon,* 387 Ill. 420; *People ex rel. Ross* v. *Becker,* 382 Ill. 404; *People ex rel. Kerner* v. *McKinley,* 371 Ill. 190; *United States ex rel Palmer* v. *Ragen,* (C.C.A. 7th Cir.,) 159 Fed. 2d 356; *United States ex rel. Kimler* v. *Ragen,* (C.C.A. 7th Cir.,) 147 Fed. 2d 137; *Whitten* v. *Bennett,* (C.C.A. 7th Cir.,) 141 Fed. 2d 295.

We are of the opinion, as was said in the case of *United States ex rel. Palmer* v. *Ragen,* (C.C.A. 7th Cir.,) 159 Fed. 2d 356, "In view of the decisions reviewed it would seem clear that the State of Illinois, under an indeterminate sentence law which does not offend the Federal Constitution, under the sentence of conviction, has jurisdiction over the relator for the maximum term of his sentence. In further view of the Illinois announcements that there is no waiver of jurisdiction under facts such as these, it follows that until the defendant has served the maximum term, Illinois' jurisdiction over him continues and that the prisoner can be imprisoned legally and constitutionally until that maximum sentence has been served or until he has

been released by parole authorities or by the executive department in accord with the pertinent statutes."

The pertinent statute applicable to the instant case, as we have heretofore pointed out, clearly provides that the commutation of sentence is to take effect upon delivery of a certified copy thereof to the prisoner or ward. Delivery to the prisoner was not made, and, of course, could not take effect until delivered. The petitioner had not received his discharge in conformance with the statute, as conclusively shown by the record, and, before such conformance, violated the rules pertaining to his parole. Since parole is a matter of grace, it is our judgment that actual receipt by a paroled prisoner of the Governor's act of commutation is prerequisite to finality of the prisoner's discharge. Having not received the Governor's, act of commutation, the writ of *habeas corpus* is quashed and the petitioner is remanded to the custody of the warden.

*Petitioner remanded.*