(No. 4970—

JOSEPH SMITH, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 24, 1969.*

ROGERS, STRAYHORN AND HARTH, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; DANIEL N. KADJAN and PHILIP J. ROCK, Assistant Attorneys General, for Respondent.

PERLIN, C.J.

Claimant, Joseph C. Smith, seeks recovery of the sum of $15,000.00 for respondent's deprivation of his liberty by his alleged unlawful incarceration for two years, eight months and twenty-seven days in the Illinois State Penitentiary, Menard, Illinois. The alleged wrongful deprivation of liberty extended from June 22, 1956 until March 19, 1959 when claimant was discharged from the Menard State Penitentiary on a Writ of Habeas Corpus.

Claimant's action is brought under the provisions of the Illinois Court of Claims Act, Sec. 8C, which reads in part as follows:

"The Court shall have jurisdiction to hear and determine the following matters. . . All claims against the State for time unjustly served in prisons in this State where the persons imprisoned prove their innocence of the crime for which they were imprisoned. . . For imprisonment of 5 years or less, not more than $15,000.00."

The record reveals the following sequence of events:

1. On October 5, 1934, claimant was convicted of the crime of burglary in the District Court of Mil-

waukee, Wisconsin, and placed on probation. He left the State of Wisconsin.

2. On January 18, 1940, claimant was convicted of unarmed robbery in the Criminal Court of Cook County, and sentenced to a term of from one to twenty years to be served in the Illinois State prison located at Joliet, Illinois.

3. A warrant filed for claimant by the Chief of Police of Milwaukee, Wisconsin was dated April 1, 1940.

4. After claimant served five years of this sentence, the Illinois Pardon and Parole Board met in June, 1945, and ordered that claimant be released to Wisconsin authorities effective July 16, 1945.

5. A Parole Agreement, dated June 12, 1945, with the notation "Effective July 16, 1945. Wisconsin authorities to be notified before release" was signed by claimant. The Parole Agreement thus signed incorporated "Rules Governing Prisoners on Parole", and a statement that read:

"I, Joseph Smith, an inmate of the above named Division of the Illinois State Penitentiary, hereby declare that I have carefully read or have had read to me, and do clearly understand the contents and conditions of the above rules regulating the parole of prisoners and the above parole agreement, and I hereby accept the same, and do hereby pledge myself to comply honestly with all said conditions, and further agree that, should I be arrested in another state and charged with a violation of my Illinois parole, I will waive extradition, and will not resist being returned to the Illinois State Penitentiary."

The Parole Agreement further stated that Joseph Smith would be permitted to go outside the enclosure of the Penitentiary for the period of his maximum "temporarily and conditional-

ly," in accordance with the rules or until he had been discharged in pursuance of law.

6. A Waiver of Extradition, dated July 5, 1945, and signed by claimant, stated that Joseph Smith "freely and voluntarily" agreed to accompany Milwaukee, Wisconsin authorities as a prisoner from the Illinois State Penitentiary, Joliet, Illinois.

7. On July 16, 1945, claimant was released to the custody of Wisconsin authorities. Claimant testified that he observed papers of extradition signed by the Governor of Illinois at that time.

8. Claimant was found guilty of violation of probation under the original Wisconsin burglary conviction, but the court issued a two year stay of execution upon condition that claimant leave the State of Wisconsin for that period. Claimant then moved to California.

9. On October 13, 1947, the Illinois Pardon and Parole Board issued an order, which declared that claimant was declared a defaulter on out-of-state parole.

10. In January, 1951, claimant was arrested and convicted in Denver, Colorado of a misdemeanor, and upon completion of service of his sentence was notified by the Denver authorities of the outstanding Illinois warrant and held for its execution. The Denver authorities notified Illinois authorities that claimant was being held. Illinois, acting through its Pardon and Parole Board, cabled the Denver police authorities that claimant Smith was no longer wanted by Illinois au-

thorities, and he was then released from custody of the Denver authorities.

11. On April 9, 1953, claimant was sentenced by the Federal District Court of Detroit, Michigan to four years in the United States Penitentiary at Leavenworth, Kansas for violation of the National Motor Vehicle Theft Act. The warrant for violation of parole from the State of Illinois was filed against claimant at that institution on April 29, 1953.

12. After serving thirty-five months of a four year sentence claimant was released from Leavenworth, and told that Illinois had lodged a detainer for warrant of parole violation. He was then transferred to Illinois. He signed a waiver of extradition on June 20, 1956, and was returned to Illinois to the Menard Division of the Illinois State Penitentiary on June 22, 1956.

13. Claimant was given a hearing on the question of parole violation in August, 1956, and under date of September 12, 1956 the following order was entered by the Parole Board: "Declared a violator as of September 22, 1947. Maximum 'X'."

14. On March 19, 1959, a Writ of Habeas Corpus was signed by Judge Harold O'Connell of the Criminal Court of Cook County, and claimant was ordered discharged from the custody of respondent.

Before claimant can recover under the provisions of the Illinois Court of Claims Act, Sec. 8C, he must prove the following elements by a preponderance of the evidence; (1) time unjustly served in prisons in the State of Illinois; and, (2) innocence of the crime for which he was imprisoned.

The first issue to be decided is whether claimant was illegally imprisoned from June 22, 1956 until March 19, 1959 at the Menard State Penitentiary.

If claimant was on parole at the time of release to Wisconsin authorities, it would appear that Illinois would have retained jurisdiction over claimant, and would have been able to imprison claimant at any time before the twenty year maximum sentence was served, in absence of final discharge from parole. (*People ex rel Richardson* vs. *Ragen,* 400 Ill. 191, 79 N.E. 2d 479; *People ex rel Palmer* vs. *Ragen,* 159 F 2d 356.)

In *People* vs. *Bartley,* 383 Ill. 437, 50 N.E. 2d 517, an almost identical fact situation was presented to the Supreme Court. As in the instant case, an Illinois prisoner, McLaughlin, was paroled in an ex parte proceeding for the period of his maximum sentence, but before the effective date of his parole he was delivered to an agent of the State of Wisconsin pursuant to a requisition of the State of Wisconsin. In Wisconsin, McLaughlin was tried, convicted upon the charge for which he was extradited, and served a term in the Wisconsin State prison. He later went to Ohio where he served a term in the Ohio State Penitentiary from which he was extradicted to Illinois for an alleged violation of his parole agreement. McLaughlin was returned to Stateville Prison in Illinois where he was released on a Habeas Corpus petition.

In reviewing the above facts, the Supreme Court held that it was clear that McLaughlin was not released from Stateville on parole. The Court further held that the warrant of extradition issued by the Governor of Illinois, which resulted in the delivery of McLaughlin to Wisconsin authorities, constituted a waiver of jurisdic-

tion by the State of Illinois over the person of McLaughlin, and operated as a pardon or commutation of the sentence, and relieved him from serving the balance of the sentence imposed upon him by the Winnebago, Illinois, County Court. The Court based its conclusions on the Habeas Corpus Act, which provides ''Where, though the original imprisonment was lawful, yet, by some act, omission or event, which has subsequently taken place, the party has become entitled to his discharge.'' The court stated:

"While the Board of Pardons and Paroles did enter an order on April 20, 1936, directing the release of McLaughlin on parole effective May 16, 1936, and, while McLaughlin did sign the statement (to comply with conditions of parole agreement) above quoted on the latter date, the circumstances do not seem to warrant the conclusion that his parole was ever completed. The order admitting him to parole was a conditional one, and the conditions were never complied with. There was no sponsor suggested or provided for him, and, when the release came through the warden, there was no mention of parole. He was released solely on the demand made by the State of Wisconsin and the Governor's requisition warrant issued in obedience thereto. We believe the record shows that McLaughlin was never released at any time, but custody was simply transferred from the warden at the Illinois penitentiary to the authorities from the State of Wisconsin. Had McLaughlin been extradited while absent from prison and while on parole, it would have created a different situation." (50 N.E., 2d 519, 520)

The Court further held that, in absence of agreement between the two Governors to return the prisoner, the waiver is effective. It reasoned that, when a fugitive is in the custody of the courts of the asylum state, the executive of the asylum state is not required to surrender the fugitive until after the judgment of the court of that state is satisfied. However, the executive of the asylum state may relinquish the prisoner by waiving jurisdiction, and when the requisition of the demanding state has been honored and the fugitive surrendered, such surrender will operate as a waiver of jurisdiction of the asylum state.

As in the Bartley case, the conditions of parole requiring sponsors and employment were never complied with in the instant case, as set forth in the following paragraphs of the parole agreement:

"Rules Governing Prisoners on Parole

1. The prisoner shall proceed at once to his place of employment and report to his employer whose name is given above." (no name was given)

. . . . . .

3. The prisoner must not change employment, nor leave employment, nor change his home address, unless granted permission by the State Superintendent of Supervision or his duly authorized agent. In the event of sickness or loss of position, the prisoner shall immediately report the fact to his Parole Agent. . . . . . The prisoner shall not leave the State of Illinois without a Division of Correction order and notice of the same shall be given the prisoner by the Superintendent of Supervision or his duly authorized agent. In the event the prisoner is granted an out-of-state parole, he shall not leave the State to which he is paroled without an order of the Division of Correction. Notice of the transfer shall be given by the Parole Officer at the Division of the Illinois State Penitentiary from which the prisoner was paroled."

The June, 1945 document from the Department of Public Safety, Parole and Pardon Board, entitled "Action of the Parole and Pardon Board Property of the Inmate" stated: "At a meeting of the Parole and Pardon Board held this month, the following action was taken in your case: *Paroled: To be turned over to Wisconsin authorities.* Effective July 16, 1945." The waiver of extradition was signed July 5, 1945 before the effective date of parole, leading to the conclusion that Smith was extradited before he was paroled.

A distinction between the fact situation in the instant case where the prisoner was released directly to authorities of the demanding state and in a case where the prisoner was actually out on parole was made in *United States ex rel Hunke* vs. *Ragen,* 158 F 2d 644. In that case the Governor of Illinois honored the applica-

tion for extradition when the prisoner had been out on parole for more than two years, and, although the Illinois authorities relinquished him to Wisconsin, it was held that he was still subject to rearrest and imprisonment for completion of his sentence in Illinois for parole violation.

Therefore, the conclusion in the instant case must be that Smith was never released on parole, but that he was extradited to the state of Wisconsin. The rule, as summarized in *United States ex rel Hunke* vs. *Ragen,* is as follows: "Where a prisoner is actually confined in the penitentiary, the Governor's relinquishment of the prisoner to another state operates as a pardon." (158 F 2d 645)

While claimant Smith's imprisonment for parole violation was not technically an imprisonment for a "crime", as stated in the Court of Claims Act, it must be assumed that the word "crime" as used in the statute encompasses any offense for which a person is illegally imprisoned. Therefore, claimant has proved by a preponderance of the evidence that he was innocent of the parole violation offense for which he was illegally imprisoned, because he had never been on parole from the State of Illinois.

The following evidence was introduced on the question of damages incurred by claimant during his illegal imprisonment of two years from June 22, 1956 until March 19, 1959. At the time of the hearing in May, 1963, he had been unemployed since January, 1962. Upon his discharge in 1959, he worked at a funeral home for room and board and $30.00 per week until August, 1959. He then obtained a job as a bartender and earned $50.00 per week, and tips averaging from $3.00 to $5.00 per night.

In October, 1961, he earned $100.00 per week at the Twelfth Liberty Loan Corporation until January, 1962, at which time he resigned. His United States Federal tax return was submitted as evidence, and showed a gross earning of $1,019.19 for the year of 1961. Using this figure as a base, claimant apparently earned an average of $85.00 per month.

Claimant is hereby awarded the sum of $4,500.00.